2005 VT 7

**In re Appeal of Susan and Peter KORBET**

[868 A.2d 720]

No. 02-501

¶ 1. January 27, 2005. Brian Szad and Lois Patrie (applicants) appeal from an environmental court decision denying their application for a conditional use permit to operate a country store in the Village of Perkinsville, Town of Weathersfield. Applicants contend the court erred in denying the application by: (1) applying incorrect criteria for conditional use review and considering the store's impact on an adjacent property owner; and (2) characterizing the store as a nonconforming use. We affirm.

¶ 2. The material facts are undisputed. The subject property is located on Route 106 in the center of the Village of Perkinsville. For many years, the building housed a general store, post office, and owner's apartment. In 1996, however, the store closed, and two years later the post office moved to a location several miles outside of the village. When open, the store served as the center of activity in the village, and many residents have expressed a desire to have it reopen.

¶ 3. In 2000, applicants — who own and operate a general store in North Springfield, Vermont — purchased the subject property with plans to reopen the

Perkinsville store. In June 2001, they submitted applications for site plan review and a conditional use permit (CUP). The town planning commission held hearings on the site plan application in July and August. Appellees Susan and Peter Korbet, who reside on the property just south of and adjacent to the store, attended one of the meetings and expressed some concerns about the proposal. In August, the planning commission approved the site plan, but imposed several conditions, including the elimination of certain proposed parking spaces in the area of a leach field, and the use of natural vegetation for a proposed privacy fence between the properties. The Korbets did not appeal the planning commission decision.

¶ 4. The town zoning board of adjustment held hearings on the CUP application in August and September. On September 19, the board granted the permit, requiring applicants to develop and operate the store in conformity with the approved site plan and stated hours of operation. The Korbets then appealed the board's decision to the environmental court, which conducted a site visit and held an evidentiary hearing in May 2002.

¶ 5. In October 2002, the court issued a written decision, denying the CUP application because the proposal violated the Weathersfield town bylaws. The court first noted that under the town's zoning bylaws, the store is located in an area denominated the "Village" district, where "Permitted" uses in the district include single- and two-family homes, bed and breakfast inns, and home occupations. Uses that are "permitted upon granting of a Conditional Use Approval" include "Small enterprise[s]," defined as including a "small retail store." It is undisputed that the proposed country store falls within this category of uses requiring a CUP.

¶ 6. In granting a CUP the town's zoning bylaws require the board to con-sider "whether the proposed use will adversely affect . . . the character of the area; and/or traffic; as well as whether all applicable general and special provisions of these Bylaws would be met." Weathersfield Zoning Bylaws § 4.2.2; see 24 V.S.A. § 4407(2)(B)-(D), repealed by 2003, No. 115 (Adj. Sess.), § 119(c) (authorizing local boards to allow conditional uses if the use does not adversely affect the character of the area, traffic and bylaws in effect). Most importantly, the environmental court held that applicants' proposal did not meet the zoning requirement that "[c]ommercial . . . parking lots adjacent to residential uses shall be setback a minimum of fifty (50) feet." Weathersfield Zoning Bylaws § 6.13.2. The proposed parking scheme — nine spaces in the rear of the store and one on either side — violated the fifty-foot setback and lacked adequate screening from the view of persons within residential districts.[1]

¶ 7. Applicants argue that the environmental court incorrectly classified the store as a nonconforming use. The bylaws define nonconforming use as "[t]he

---

[1] Under the zoning bylaws, the store was required to provide one parking space for every four hundred square feet of commercial space. Weathersfield Zoning Bylaws § 6.13.3(c). The store consists of 2800 square feet and therefore needs seven commercial spaces. In addition, the bylaws require two parking spaces per dwelling unit, resulting in a requirement of four additional spaces for the rental unit and the owner's apartment within the building, for a total of eleven required spaces. The original permit application apparently accommodated thirteen spaces, including two in the front of the store, but the site plan approved by the town included eleven spaces, nine in the rear and two on the sides.

use of structures or the use of land, which use does not comply with all applicable regulations of the district in which it is located, but which did comply . . . prior to the adoption of these Bylaws." *Id.* § 6.4. The environmental court reasoned that this "small enterprise" was nonconforming because it required a CUP and one had never been obtained for the site.[2] The court also noted, however, that the store's status as a nonconforming use did not advantage the applicants in any way because the proposed parking plan was not preexisting. In any event, status as a nonconforming preexisting use would not eliminate the need for compliance with the current ordinance because such use has been discontinued for more than one year.

¶ 8. Thus, applicants' only alternative is to prevail on the theory of noncomply-

---

[2] The dissent has addressed this issue, although it is unnecessary to do so. Because we do not believe that the dissent has accurately described the state of the law, we respond in this footnote. The environmental court's decision that a use that did not have a CUP or comply with all aspects of a town's zoning bylaws was nonconforming is supported by our opinion in *In re Lashins*, 174 Vt. 467, 470-71, 807 A.2d 420, 424 (2002), which in turn relied upon the holding in *Town of Brighton v. Griffin*, 148 Vt. 264, 269, 532 A.2d 1292, 1294 (1987). To the extent that the brief and vague footnote in *In re Stowe Club Highlands*, 164 Vt. 272, 279 n.5, 668 A.2d 1271, 1276 n.5 (1995), can be construed to the contrary, *Lashins* clarified the law on this point and we follow that law here. The environmental court did not err in rejecting the testimony of the zoning administrator. The administrator's testimony purported to address a question of law beyond her competence.

ing structure. The relevant provision of the Weathersfield Zoning Bylaws states:

> A structure which does not comply with all applicable regulations of the district in which it is located, but which did comply with all applicable regulations prior to the adoption of these Bylaws, or any subsequent amendments thereto, may be maintained and repaired. Such structure may also be enlarged in any manner which does not increase the degree of noncompliance, for example, such an enlargement must be in a direction where at least the minimum required setback would remain.

*Id.* § 6.5; see also *id.* § 8 (defining noncomplying structure). The environmental court held that applicants' store is a preexisting noncomplying structure under § 6.5 because it is on an undersized lot "and the building does not comply with the setback requirements." Because the "proposed project would not enlarge the building, [] the proposed use of the building would comply with Section 6.5." The court held, however, that noncomplying structure protection for the building does not encompass the parking lot and therefore would not obviate the need for the parking lot to comply with the current bylaws. Applicants argue that the parking lot, as well as the building, is grandfathered by this status.

¶ 9. This conclusion is sustainable only if the parking lot is considered part of the noncomplying structure. In fact, parking does not fit the definition of structure contained in the bylaws. The bylaws define "structure" as "[a]n assembly of materials for occupancy or use, including, but not limited to: a building, mobile home or trailer, sign, wall, dock or athletic court." *Id.* § 8. "We use familiar rules of construction in interpreting

zoning ordinances. We first construe words according to their plain and ordinary meaning, giving effect to the whole and every part of the ordinance." *In re Stowe Club Highlands*, 164 Vt. 272, 279-80, 668 A.2d 1271, 1276-77 (1995) (citing *In re Vt. Nat'l Bank*, 157 Vt. 306, 312, 597 A.2d 317, 320 (1991)). The plain meaning of the definition excludes parking from its scope.

¶ 10. The dissent argues that the environmental court was required to accept the zoning administrator's testimony, which it asserts is contrary to the court's conclusion. We agree that the interpretation of the bylaws by the zoning board and the zoning staff "can be determinative in a close case." *In re Maple Tree Place*, 156 Vt. 494, 500, 594 A.2d 404, 407 (1991). The weight to be accorded such testimony depends on the explanation of a "reason or rationale for its decision" and a demonstration that the interpretation has been consistent. *In re Chatelain*, 164 Vt. 597, 598, 664 A.2d 269, 270 (1995) (mem.). The zoning administrator's testimony on this point was conclusory,[3] and there was no explanation of the zoning

board's rationale. Further, there is no indication that this interpretation has been consistently applied by the board. The plain meaning of the bylaw's language is contrary to the administrator's interpretation. Under these circumstances, the court acted within its discretion in not following the interpretation of the zoning administrator.

¶ 11. We recognize that the bylaw could be broader and it could allow for grandfathering of noncompliant parking in the face of new requirements. See 24 V.S.A. § 4408(a)(2) (defining noncomplying structure as "a structure or part thereof not in conformance with the zoning regulations covering ... off-street parking or loading requirements"). The statutory definition allows a municipality to include off-street parking within the structure for grandfathering purposes even though the parking is not itself a structure. See *id.* § 4303(27) (defining "structure"). The bylaw, however, failed to capture this aspect of the statutory definition. The state statute is an authorization that does not "command any particular action." *In re Stowe Club Highlands*, 164 Vt. at 278, 668 A.2d at 1276. Thus, the definition in the bylaw controls. *Id.* at 278, 668 A.2d at 1277. The trial court determined that parking was not part of the structure, unlike minimum lot or setback requirements. We must uphold its construction of the bylaw unless it is "clearly erroneous, arbitrary or capricious." *In re Casella Waste Mgmt.*, 2003 VT 49, ¶ 6, 175 Vt. 335, 830 A.2d 60. Here, the court's construction is entirely reasonable, indeed unavoidable, given the limits of the definition.

¶ 12. Even if the court was incorrect and the parking could properly be considered as part of the noncomplying structure, the proposal still does not meet the requirements set out in the bylaws. Under § 6.5, noncomplying structures may be enlarged but only in a "manner which does not increase the

---

[3] The zoning administrator first testified that the former store was a noncomplying structure because it was not a noncomplying use. Later the zoning administrator testified that any zoning parking setback requirements do not apply because off-street parking is contained within the noncomplying structure definition in 24 V.S.A. § 4407. The zoning administrator was not attempting to interpret the term "noncomplying structure" as used in the bylaws; instead she was relying on the statutory definition. The court was not required to defer to this testimony as it was a legal opinion, which the administrator was not qualified to give, and, as discussed in ¶ 11, is incorrect.

degree of noncompliance." Previously, the rear of the building was used for parking only by the owners, resulting in a small number of vehicles that entered the setback area. The proposal makes the rear of the building the primary location of customer parking, with nine spaces set aside for this use, greatly increasing the traffic volume in the setback area. The environmental court's conclusion that the parking arrangement increases the degree of noncompliance is not erroneous, arbitrary or capricious and must be upheld.

¶ 13. In view of our disposition, we need not address applicants' argument that the environmental court. misapplied the conditional use criterion relating to the store's impact on the character of the area and erred in holding that the proposed development did not meet this standard. See 24 V.S.A. § 4407(2)(B) (allowing zoning board to issue CUP if the proposed conditional use does "not adversely affect . . . [t]he character of the area affected"). We conclude that the environmental court never held that the application did not meet this conditional use criterion. Rather, the court held that the permit could not be granted because the application violated the parking setback requirement, whether or not the other general conditional use standards — including that relating to effect on the character of the neighborhood — were met. See Weathersfield Zoning Bylaws §§ 4.2.2 (requiring proposed conditional use to meet all applicable general and special provisions of the zoning ordinance), 6.13.2 (small enterprise parking lots "adjacent to residential uses shall be setback a minimum of fifty (50) feet").

¶ 14. We note that in presenting their evidence, applicants presented an alternative parking plan and asked the environmental court to remand the case to the zoning board to consider it. Applicants did not follow through with this proposal in their requests for findings and conclusions .in the environmental court or their appeal to this. Court.[4] Nevertheless, they are free to .pursue the alternative they developed by a new submission to the zoning board either.for a CUP, if they can comply with current parking requirements, or a variance.

*The environmental court decision denying the conditional use application is affirmed.*

¶ 15. **Skoglund, J.**, dissenting. I respectfully dissent. The majority dismisses applicants' claim that the trial court mischaracterized the property as a

_____

[4] Despite the total lack of preservation of this proposal, the dissent argues that we should reverse the environmental court decision and direct that court to remand the matter to the zoning board to consider the alternative parking proposal. Applicants clearly waived any reliance on the alternative parking plan by failing to formally request the remand or make the plan a basis for relief in the proposed findings and conclusions. See *In re Lorentz*, 2003 VT 40, ¶ 5, 175 Vt. 522, 824 A.2d 598 (mem.) (refusing to consider arguments not contained in statement of questions on appeal). They again waived any reliance on it by failing to present it to this Court. Even if applicants preserved this proposal, we fail to see how they are advantaged by a remand rather than a new submission to the zoning board. As the dissent acknowledges, the proposal must be first presented in the town review process with public notice to interested parties so they can present their views. See *Simendinger v. City of Barre*, 171 Vt. 648, 652, 770 A.2d 888, 894 (2001) (mem.) (noting that environmental court cannot consider issues not addressed at municipal board level); *In re Maple Tree Place*, 156 Vt. 494, 500, 594 A.2d 404, 407 (1991).

nonconforming use, observing that the trial court found that its "status as a nonconforming use did not advantage the applicants," and that any "nonconforming preexisting use would not eliminate the need for compliance with the current ordinance because such use has been discontinued for more than one year." *Ante*, ¶ 7. Applicants, however, were not arguing for nonconforming use status, much less for any "advantage" from such a designation. On the contrary, they were arguing that the property was *not* a "nonconforming use," and therefore that the one-year discontinuance of use was irrelevant under the ordinance. There is no question, moreover, that the issue was critical to the trial court's ruling. As the court itself explained, "[i]n short, the proposed store is a nonconforming use," and "[t]his factor weighs heavily against the granting of a conditional use permit, given the important goal of gradually eliminating nonconforming uses."

¶ 16. The trial court's ruling was erroneous. Although we have observed that the parallel state statute, 24 V.S.A. § 4408(a)(1), defines a noncomplying structure as a nonconforming use, *In re Stowe Club Highlands*, 164 Vt. 272, 278, 668 A.2d 1271, 1276 (1995), the town's bylaws clearly differentiate between the two. Under the ordinance, a nonconforming use is "[t]he *use* of structures or the *use* of land" which does not comply with current regulations and which "may be continued indefinitely" unless discontinued for one year. (Emphasis added.) A noncomplying structure is separately defined as "[a] structure which does not comply with all applicable regulations of the district" but which may be maintained or repaired or "enlarged in any manner which does not increase the degree of noncompliance."

¶ 17. The issue here involved a noncomplying structure rather than a nonconforming use because the noncompliance was caused by a conflict with the current off-street parking requirements, not by a land *use* impermissible in the village zoning district. See *In re Stowe Club Highlands*, 164 Vt. at 278-79, 668 A.2d at 1276 (noting that under town zoning bylaw which differentiated between noncomplying structure and nonconforming use, the issue "involves a noncomplying structure, and not a nonconforming use, because the nonconformity is caused by a violation of setback requirements and not a land use impermissible in the zone involved"). The fact that a small enterprise such as the proposed country store is "permitted [only] upon granting of a Conditional Use Approval" in the village district does not render it a nonconforming use. See *id.* at 279 n.5, 668 A.2d at 1276 n.5 (where barn and proposed house were "authorized or conditionally authorized uses" in the district where they were located "there [was] no nonconforming use problem").

¶ 18. This interpretation is consistent with the town's interpretation of its own ordinance. See *In re Kisiel*, 172 Vt. 124, 133, 772 A.2d 135, 142 (2000) (in construing zoning ordinance we look to interpretation by municipal bodies responsible for its implementation). The zoning administrator testified at the hearing as follows:

> Q: ... [F]or the subject property, and it's use as a general store, is it a nonconforming use, or is it a noncomplying structure; can you tell us?
>
> A: Well, one of the first things the zoning board would do would look at that and they would look at the table of district[s] and uses, which is page five; look in the village zoning, which is where the property is located. They would look for the use, a retail store, which is what is being proposed, would come under small enterprise. If you

look under a conditional use [in the ordinance] you'll see small enterprises listed. : . . .

*So therefore the use of a retail store would not be a nonconforming use.* To fall under that category, it would have to be listed under uses *not permitted.*

Q: And that's not the case?

A: And that is not the case.

(Emphasis added.) Thus, in denying the conditional use permit, the trial court erroneously relied on the general zoning goal of eliminating nonconforming uses from districts where they are no longer permitted.

¶ 19. The majority is similarly mistaken in concluding that off-street parking does not fall within the noncomplying structure provision of the ordinance. The Weathersfield zoning administrator testified that a noncomplying structure under the ordinance is "a structure or part thereof that does not meet the items such as setback, dimension, *off-street parking*, [or] height." The administrator was then asked point-blank whether the proposed store implicated the ordinance's provision relating to nonconforming uses or noncomplying structures. The administrator's response, part of which has already been quoted above, continued as follows:

Q: So in the absence of it being classified, then, as a nonconforming use, I believe you told us why, it is then considered to be a noncomplying structure?

A: That's correct.

The administrator went on to explain that the ordinance did not restrict the continued use of the noncomplying structure, regardless of whether it had been discontinued for over a year, so long as applicants did not increase the degree of noncompliance.

¶ 20. The zoning administrator's explanation was cogent, and her interpretation fully supports analysis of the parking requirement under the noncomplying structure provision of the ordinance, rather than the nonconforming use section. The latter, as noted, prohibits reestablishment of a nonconforming *use* once it has been discontinued for one year. The ordinance contains no such provision affecting noncomplying structures, which — as the administrator explained — are limited only by the requirement that they not be "enlarged in any manner" that would "increase the degree of noncompliance." Thus, the building was effectively grandfathered for purposes of compliance with the off-street parking requirements unless the proposal "enlarged" the degree of noncompliance. In this regard, there was testimony that store patrons in the past had customarily parked in front of the store and had occasionally parked on the side and in the rear to drop off recycling materials, that postal workers and delivery trucks had regularly parked on the south side of the store along the driveway adjacent to the Korbets, and that the owners had parked in the rear.

¶ 21. With the designation of *nine* permanent spaces in the rear lot, the plan approved by the planning commission and the board modified the former parking scheme, resulting in the trial court's finding that the rear parking plan "would exceed any burden that existed under the prior operation." Significantly, however, the court did not make findings as to whether an *alternative* parking plan that called for only *four* spaces in the rear lot which met the fifty-foot setback requirement from the Korbet property would increase the degree of noncompliance. The court admitted the alternative plan, over objection, based in part on applicants' argument that the court could "send [the case] back down to the zoning

board of adjustment with instructions to consider that alternative plan as a condition of a permit. I believe that is well within this Court's authority to accomplish. And that's the purpose of our offering it."

¶ 22. Applicants were correct. We have held that notwithstanding the environmental court's de novo standard of review, "a remand may be appropriate ... where the court is called upon to 'address[] new issues never presented to the planning commission and on which interested persons have not spoken in the local process.'" *Timberlake Assocs. v. City of Winooski*, 170 Vt. 643, 644, 756 A.2d 774, 776 (2000) (mem.) (quoting *In re Maple Tree Place*, 156 Vt. 494, 500, 594 A.2d 404, 407 (1991)). Parking became the critical issue in this case, and it was well within the court's authority to admit the alternative plan. As this plan represents a significant and viable alternative that does not appear to violate the setback requirements of the bylaws, this Court should reverse the trial court decision and remand the matter with directions to return the case to the zoning board of adjustment for consideration of the alternative plan.[5]

¶ 23. Finally, I am compelled to conclude that the trial court misapplied the criterion relating to the store's impact on the character of the area. The court found that although the village is predominantly residential in character, it contains several relatively low-impact commercial uses, including a bed and breakfast inn, a garage, and a barbershop. The testimony of the village residents — including Susan Korbet — was virtually uniform that the reopening of the store would have a positive impact on the life of the village. The court further found that the store would not negatively impact village traffic, nor was there any evidence that it would generate other negative secondary effects in the area. Nevertheless, the court found that this evidence was offset by Susan Korbet's testimony that she had disliked the lack of privacy and noise generated by delivery trucks, postal workers, and patrons parking or driving in the driveway and rear lot adjacent to her property when the store had been in operation. The court found that the reopening of the store would have a negative impact on the Korbets.[6]

---

[5] Plaintiffs' surveyor testified that he had created the alternative parking plan in order to reduce the proposed number of parking spaces in the rear lot to four, all of which complied with the fifty-foot setback requirement from adjacent residential property. Testimony that the building's former owners and that store patrons had occasionally parked in the rear lot suggested that the four spaces would not tangibly increase the pre-existing degree of noncompliance, although as noted the court did not make specific findings in this regard. The alternative plan also called for three commercial spaces in front of the store, a scheme that

appears to largely recreate the former practice of store patrons, although again the court did not specifically address this issue.

[6] The majority's assertion that the trial court never held that this conditional use standard was unmet, *ante*, ¶ 13, is not supported by the record. The trial court carefully and explicitly addressed each of the "factors listed in Section 4.2.2," which sets out the criteria for "Conditional Uses." After finding that the store would not adversely affect the traffic in the area, the court proceeded to consider the store's impact on the "character" of the area. The court noted that although the community as a whole would enjoy the

¶ 24. The trial court's conclusion is flawed in several respects. First, there was no evidentiary basis to distinguish the amount of traffic formerly generated by the post office, which has since moved, from that attributable to the store. Furthermore, "[w]e have held that the adverse effect test must be applied reasonably to prohibit only substantial and material adverse effects," *In re Miller*, 170 Vt. 64, 69, 742 A.2d 1219, 1223 (1999), and that the "area affected" generally must consist of either the entire zoning district or the local neighborhood, but cannot be limited to one or two adjoining landowners. *Id.* at 70-71, 742 A.2d at 1224. Thus, we have cautioned against the use of "general conditional use and performance standards to resolve impacts on *one specific residential property.... [S]ite* plan review, not conditional use review, is the proper process to address such impacts." *Id.* at 71, 742 A.2d at 1225 (emphasis added). The record here shows that the Korbets had, in fact, participated in the site plan review process, raised concerns about the store's impact on their property, obtained several concessions including a requested natural vegetative privacy fence, and failed to appeal the town's final approval. Indeed, the minutes of the board's September 5, 2001, meeting state that Peter Korbet had reviewed the site plan and "felt all issues had been addressed and

___

benefits of the store, "the Korbets would bear most of the negative impact," and the court observed that the bylaws prohibit placing an "unfair burden on anyone." The unmistakable implication of the court's findings is that the store's impact on one neighboring landowner outweighed — in its view — the benefit to the community as a whole, and this conclusion plainly contravenes our holding in *In re Miller*, 170 Vt. 64, 69-71, 742 A.2d 1219, 1223-24 (1999).

did not offer any suggestions for changes." Thus, the court here erred in addressing these or other objections that the Korbets should have explicitly raised with the planning commission and, if dissatisfied, appealed to the environmental court. Site plan issues not raised with the planning commission and preserved by appeal from its decision should not be addressed through the "back door" of an appeal from the issuance of a conditional use permit.

¶ 25. For all of the foregoing reasons, I would reverse the judgment of the trial court, and remand for further proceedings consistent with the views expressed herein. I am authorized to state that Justice Reiber joins this dissent.