## STATE OF VERMONT

## VERMONT ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| | } | |
| <u>In Re: Murphy Revocable Trust</u> | } | Docket No. 47-2-05 Vtec |
| (Appeal of Marshall, et. al.) | } | |
| | } | |

## <u>Decision</u>

This matter was heard on the merits at the Costello Courthouse in Burlington, Vermont before Environmental Judge Thomas S. Durkin on June 2, 2005. It concerns an appeal by Frank Marshall and the Marshall Revocable Trust (Appellants) from the Decision of the Town of Milton Development Review Board dated January 27, 2005, denying Appellants' appeal of the Milton Zoning Administrator's September 28, 2004 approval and permit issued to the Murphy Revocable Trust for the construction of a three-bedroom single family residence, decks and septic system upon its presently undeveloped lot on the shoreline of Lake Champlain.

Appellants are represented by Jon T. Anderson, Esq.; Appellee-Applicant is represented by Vincent A. Paradis, Esq.; and the Town of Milton (Town) is represented by Gregg H. Wilson, Esq., who advised the Court prior to the merits hearing that the Town had elected not to participate in the hearing and requested that Mr. Wilson not attend the hearing.

## <u>Procedural Background</u>

Catherine Murphy Arbital, Trustee of the Murphy Revocable Trust, (hereinafter collectively referred to as either Applicant or Murphy) first applied on August 22, 2003 to the Milton Zoning Administrator (ZA) for zoning approval of a proposed three-bedroom single family residence. Ms. Arbital later withdrew that application, after the Milton Selectboard approved changes to the zoning and subdivision regulations. The

Milton Development Review Board (DRB) then, presumably at Ms. Arbital's request, reviewed the previously withdrawn application at its November 20, 2003 hearing and issued its Decision on December 4, 2003, granting site plan approval and a requested variance. That Decision was appealed to this Court and became the subject of Docket #1-1-04 Vtec.

This first appeal was ultimately dismissed by docket entry on February 9, 2005, at the request of Appellee-Applicant's attorney, who had advised the Court in his filing of July 28, 2004, that the Town had made further amendments to its zoning regulations, and that the Applicant had decided to submit another application to the ZA for approval under the recently revised regulations.

This additional application was submitted and resulted in the ZA's approval and issuance of a zoning permit on September 28, 2004. The ZA determined that Ms. Arbital's most recent application complied with all applicable provisions of the revised Milton Zoning Regulations (Regulations). Appellants then appealed to the DRB, requesting that the DRB overturn the ZA's determination that the application complied with the revised Regulations. By Decision dated January 27, 2005, the DRB denied Appellants' requests, and specifically found that the application complied with the applicable Regulations. Appellants then appealed to this Court on February 25, 2005. The undersigned judge was specifically assigned to hear the pending appeal on May 10, 2005.

**Findings of Fact**

Based upon the evidence presented at the hearing, including some stipulations entered on the record of the hearing, the Court makes the following findings as to the facts material to the pending zoning application:

1. Catherine Murphy Arbital is the sole Trustee of the Murphy Revocable Trust, which is the present holder of legal title[1] to two contiguous parcels of land located on the shoreline of Lake Champlain in Milton, Vermont.

2. It is not disputed by the parties here that the two contiguous parcels have merged into one parcel, which is known to have a street address of 746 Everest Road (the "merged parcel" or "Murphy parcel").

3. The parcels were originally acquired by Ms. Arbital's parents, Edward F. and Marie R. Murphy, by separate deeds, from the same grantors, in 1965 and 1966. Particularly when viewed from the perspective of 21st century conveyance practices, these deeds are not models of specificity or clarity.

4. Each deed references that a right of way is also conveyed, "from the public highway to the lot herein conveyed, said right of way to be used in common with others entitled to do so."

5. At the time of the drafting of the deeds, Everest Road had not been fully developed. The developed roadway stopped in front of the parcel owned by Mr. and Mrs. Dandurand, which is located to the south of the Murphy parcel. To access their parcel, the Murphys would walk from the end of the developed roadway in front of the Dandurands' parcel, through a wooded area, to their parcel.

6. Everest Road was extended by Mr. Murphy and his neighbors in the late 1960s. It continues to this day as a private roadway. The traveled portion of the roadway is about 10 feet wide. The deeds introduced at trial do not reference a specific width for the right-of-way.

7. The merged parcel has 150 feet of frontage along the low water mark of Lake Champlain and has northerly, easterly and southerly boundaries also of 150 feet in length, as referenced in the combined deeds.

---

[1] But see 27 V.S.A. § 351(a) (noting that when title to real estate is conveyed to a trust, the "effective conveyance . . . [is] to the trustee of the trust . . . .").

8. The merged parcel contains approximately 22,500 square feet or about 0.52 acres.

9. The minimum lot size in the current Regulations for the Shoreline district is 100,000 square feet or about 2.3 acres.

10. The Murphy parcels were conveyed prior to the enactment of zoning in Milton.

11. Neither the Trust, nor its predecessors in title, owned adjoining land while zoning was in effect in Milton.

12. Appellants agreed at trial that Applicant's parcel qualifies as a pre-existing small lot, as that term is used in Regulations § 630.

13. When lawful pre-existing small lots are proposed for residential development, Regulations § 631 reduces the minimum side and rear setbacks to 15 feet.

14. Everest Road is shown on Applicant's site plan, admitted at trial as Applicant's Exhibit 9 and Appellants' Exhibit 14 (the latter Exhibit contains the engineer's signature; both Exhibits are hereinafter referred to as the revised site plan), and lies to the east of Applicant's parcel.

15. Everest Road is a private right-of-way and not a town road. Everest Road serves as access to a public highway (unidentified at trial, although the revised site plan refers to "Lake Road" to the south) for the properties owned by the parties here and their neighbors along Lake Champlain.

16. The Murphy parcel is located in the Shoreland Residential (R6) zoning district, and is subject to the provisions of Regulations §§ 352 through 358. Residential development in this district is controlled by § 354.

17. Ms. Arbital filed the application which is the subject of this appeal on September 1, 2004. The site plan presented at trial contained the following additions or revisions from the site plan originally presented to the ZA and the DRB:

   a. The revised site plan contains three references to easterly boundaries on or to the east of the Murphy parcel: (1) the westerly boundary of the Everest Road private right-of-way (denoted on Exhibit 14 with a green highlight);

(2) an easterly boundary line established by the research[2] of Appellants' surveyor, Ronald E. Gauthier, L.S., who testified as an expert at trial (denoted on Exhibit 14 with a yellow highlight); and (3) the easterly boundary line represented in Applicant's original site plan filing (denoted by a bold, black line).

b. The proposed well was relocated approximately 10 feet, to lie within the lot area inside the easterly boundary line proposed by Mr. Gauthier.

c. The percentage of total area on the Murphy lot proposed to be disturbed was reduced from 34.9% to 32.5%. Regulations § 357 restricts removal of trees or groundcover within 150 feet of the Lake Champlain shoreline above certain percentages.

18. Surveyor Gauthier discovered two surveyor's pins in the course of his investigation which appear to denote the northeasterly and southeasterly corners of the Murphy parcel. Both of these pins are located some measurable distance (more than 5 feet; less than 30 feet) from the westerly boundary of the traveled lane of Everest Road. At trial, Applicant did not offer evidence to contradict Mr. Gauthier's representations.

19. As to the exact location of the Murphy parcel easterly boundary line, Applicant conceded at trial that the Gauthier line most likely represents the accurate location of the easterly boundary line referenced in the original source deeds of 1965 and 1966. Thus, Applicant's presentation at trial was that the Murphy parcel does not have frontage on Everest Road. However, Applicant's attorney and engineer asserted that Applicant has a right-of-way over and across the cropped triangular parcel between the Murphy parcel and Everest Road, as referenced in the original source deeds.

20. The proposed dwelling will not exceed 35 feet in height from ground level and respects the following setbacks, all as shown on Applicant's revised site plan:

a. The nearest point on its northern side is to be about 27.5 feet from Appellants' southerly property line.

---

[2] There was much reference at trial to the easterly boundary line established by Mr. Gauthier's research, but no survey or other document prepared by him was offered into evidence. Applicant's engineer conceded at trial that Mr. Gauthier's easterly boundary line "may" be correct and incorporated it into his revised site plan, but was unwilling to concede that the easterly boundary line his plan established was incorrect.

b. The nearest point on its easterly side is about 40 feet from the westerly edge of Everest Road and some undetermined distance, estimated by reference to the site plan as no less than 15 feet from the easterly boundary line suggested by Applicant's engineer and Appellants' surveyor.

c. The nearest point on its southern side is about 80 feet from the property line shared with Dandurand.

d. The nearest point on its westerly side is located over 68 feet from the mean high water mark of Lake Champlain.

21. Lake Champlain is a public waterway. Its shoreline is represented by the high water mark[3] of the Lake, per the definitions contained in Regulations § 1010.

22. As to the septic plans for the proposed dwelling, Appellants agreed at trial that Applicant's plans, as shown on Applicant's Exhibits 10 and 11, satisfy the applicable Regulations regarding septic design, location, and isolation distances.

23. As to the shoreline development or ground cover disturbances proposed, Appellants agreed at trial that Applicant's plans, as evidenced on Applicant's revised site plan, conform with the applicable restrictions contained in Regulations § 357.

## Conclusions

### A. Preliminary Rulings

During the course of the trial and in filings thereafter, Appellants raised two legal issues that could preclude this Court from addressing the merits of the pending application. We therefore address those issues first.

First, Appellants assert that the application presented at trial contains changes to the site plan that are so material as to divest this Court of jurisdiction to consider the application in this de novo appeal. Appellants suggest that the proper course is for the revised site plan to be remanded back to the DRB for consideration. We disagree.

---

[3] Applicant's westerly boundary is referenced in the deeds admitted at trial as "the low water mark" of the Lake. We do not address the implications of this discrepancy here. Quiet title actions are within the jurisdiction of Superior Court, not this Court.

Both parties cite the Court to In re Torres, 154 Vt. 233 (1990), for the principal that the jurisdictional authority of this Court in hearing appeals from appropriate municipal panels (AMPs) "is as broad as the powers of [the AMP], but it is not broader." Id. at 235. Thus, we must determine if the changes proposed by Applicant here could have properly been considered by the DRB below, or whether the changes are so material as to require remand.

We first note that the reasoning in the Torres precedent and the case cited therein[4] stems from an acknowledgement that many municipal permit applications evolve as they proceed through the permit process. It may be a rare application that does not include some minor amendment, often made in response to neighbors' concerns or comments from municipal officials, by the time a DRB passes judgment on an application. We decline to interpret Torres as an absolute barrier to that necessary evolutionary process in permit proceedings. To do so could stifle the ability of neighbors and applicants to consider minor revisions to a proposed development, without requiring an applicant to start the permit approval process all over again.

There are, of course, occasions when an application has been changed in such a material way as to require the reviewing body to remand the application. Examples of such material changes include changes to the nature of the approval being sought, such that notice must be provided to parties that was not required to be provided in connection with the original application. In fact, the Torres case provides an example of such a situation.

The applicants in Torres first applied for a home occupation permit to construct and operate a 2,000 square foot auto body shop on their home property. The permit was granted by the local zoning board and was appealed by Mr. and Mrs. Torres, who

---

[4] In re Poole, 136 Vt. 242, 247 (1978) (interpreting the provisions of 24 V.S.A. § 4472(a) relating to de novo appeals of zoning matters as directing that "the trial court has the duty to enforce, and the power to condition or waive, the zoning regulations in the same manner as the Zoning Board of Adjustment or the Planning Commission. The court cannot abrogate its obligation in such a hearing by leaving the issues of enforcement or waiver to the two administrative bodies.").

lived across the road.  The trial court allowed the application to be amended at the de novo trial to a conditional use request, after the Court determined that the application did not conform to the bylaw definition of "home occupation."  Our Supreme Court reversed the trial court, concluding that the original application had changed so materially as to be outside the trial court's jurisdiction.  Id. at 235–6.  The Supreme Court reasoned that changing an application from a request for a permitted use permit to a request for a conditional use permit was so material as to require the trial court "to remand the matter for full consideration" by the municipal panel below.  Id. at 236–7.

Appellants here make a somewhat novel argument that the DRB review in the present appeal was limited to a determination of whether the ZA's approval was proper, and not whether the application conformed to the Regulations.  This argument is intriguing; it infers that appeals of a zoning administrator's decision do not require the DRB to review the merits of the application.  We are unaware of statutory authority or precedent to support this characterization of appeals from zoning administrator determinations.  A review of the DRB decision appealed from here also does not support this characterization, since it is clear from the DRB's Decision of January 27, 2005 that the DRB conducted a review of the application and its conformance with the revised Regulations.

The changes to this application are best described as minor.  The well location was moved 10 feet.  The disturbance within 150 feet of the shoreline was changed from 34.9% to 32.5%.  The easterly boundary was shown in the original site plan as aligned with, although not completely following, the westerly boundary of Everest Road.  In the course of discovery for the pending appeal, Appellants retained a surveyor, who discovered further boundary references that moved this boundary line 5 to 28 feet from Everest Road.  Whether this change results in the need for a variance or impacts on the "frontage" for this lot is discussed in more detail below.  The easterly boundary change does not result in a change to what is being proposed (a single family residence) or the

ordinance provisions under which the application is reviewed. In sum, none of the changes made to the pending application are of such a material nature as to exceed the jurisdictional authority of this Court. We therefore decline Appellants' recommendation to remand this application back to the DRB.

The second issue Appellants raise is whether Applicant is excused from complying with the minimum frontage requirement for this district. The parties agree that the Shoreline district requires a "Minimum Road or Shoreline Frontage [of] 200 ft." Regulations §§ 354 and 355. The Murphy parcel has 150 feet of shoreline frontage. While the original application represented that the Murphy parcel also had frontage on Everest Road,[5] the revised site plan presented for review at trial no longer shows frontage along Everest Road.

Here is where the parties disagree. Appellants suggest that the project as presented must first obtain a variance from the minimum frontage requirement. Applicant suggests that the small lot exemption provisions (Regulations §§ 630 and 631) also exempt the Murphy lot from the width and depth requirements of the Shoreline district. To answer this question, we look to the language of Regulations § 630:

> Any [qualifying[6]] lot . . . may be developed for the purposes permitted in the district in which it is located, even though not conforming to minimum lot size requirements, if such lot is not less than ⅛ ACRE in area with a minimum width or depth dimension of forty (40) feet.

---

[5] The parties' respective arguments infer that "frontage" on a road and shoreline may be combined for purposes of satisfying the minimum frontage requirement of the zoning district. Such an interpretation appears to be at odds with the definition of "frontage" contained in Regulations § 1010 ("The minimum required FRONTAGE for a lot . . . shall be provided along a continuous front property line of a lot . . . ."). We are also not certain that Everest Road qualifies as either an "approved private STREET, or approved right-of-way" under § 1010. However, we no longer need to address these definitional issues, since the revised site plan presented for review at trial no longer has road frontage on Everest Road. Regulations § 1010 permits the shoreline to be frontage for a lot.

[6] We do not quote the qualifying language of the ordinance, since Appellants conceded at trial that the Murphy lot qualifies as a pre-existing small lot under § 630.

We have previously held that when a parcel qualifies as a small lot, it must still conform to setback requirements, or receive a variance from them, if a zoning permit is to be granted. In re LaBounty Enterprises, Inc., Docket Nos. 232-12-04 Vtec and 85-5-05 Vtec (Vt. Envtl. Ct., Sept. 16, 2005), slip op. at 4. The rationale of LaBounty was two-fold: the small lot exemption provision did not specifically authorize a waiver of setback requirements, nor did the exemption provision provide absolute minimum setbacks that a lot must meet to qualify for exemption status. In this regard, we see a clear distinction when addressing width or depth requirements.[7]

Section 630 specifically exempts qualifying lots from "lot size requirements" (emphasis added), provided that the parcel is at least one-eighth of an acre in size and no less than 40 feet in width or depth. Appellants would have us read § 630 as only exempting the parcel from the size requirement, but this argument ignores the plural tense of the word "requirements." Further, both § 630 and its enabling statute[8] specifically set limits on the minimum width and depth of a qualifying lot.

Appellants complete their argument on this point with a reference to Regulations § 150, which requires all development to "comply with the minimum LOT AREA, FRONTAGE, SETBACK areas and all other requirements" of the applicable zoning district. Section 150 precedes the ordinance provisions which itemize the requirements of the various zoning districts (§§ 200 through 480); § 150 expressly establishes that compliance with the district requirements is necessary for a permit to issue.

When determining the applicability of an ordinance provision, we are instructed to give "effect to the whole and every part of the ordinance." In re Korbet, 2005 Vt. 7, ¶9 (citing In re Stowe Club Highlands, 164 Vt. 272, 279 (1995) and In re Vt. Nat'l Bank, 157 Vt. 306, 312 (1991)). As a whole, the Milton zoning regulations contain provisions relating to pre-existing small lots (§ 630), non-conforming uses (§ 500) and non-

---

[7] And road or shoreline frontage, which must by necessity be either the width or depth of a lot.
[8] 24 V.S.A. § 4412(2), formerly § 4406(1).

complying structures (§ 510), among other allowable exceptions to strict compliance with the district requirements.  To follow Appellants' interpretation of § 150, absolute conformance to the district requirements would make these and other provisions of the Milton Regulations a nullity.  We decline to do so.

Appellants offer the precedent of this Court's decision in In re Appeal of Laferriere, Docket No. 223-12-98 Vtec (Vt. Envtl. Ct., July 6, 2000), slip op. at 4, in support of the notion that lot depth and width requirements are not waived by small lot provisions.  We note that the portion Appellants specifically cite from Laferriere does not expressly speak to width and depth requirements.  It appears the decision focuses on whether the subject parcel qualifies as a pre-existing small lot and whether a setback variance is needed, but these points are less than crystal clear in the Laferriere decision. We view the prior decisions from LaBounty and In re Appeal of Jenness & Berrie, Docket No. 134-7-04 Vtec (Vt. Envtl. Ct., Oct. 5, 2005), slip op. at 1, to be more directly on point to the issue before us here.  We therefore conclude that Regulations § 630 exempts the Murphy parcel from the 200 foot minimum frontage requirement in the Shoreline district.

**B.    Merits of Application**

When an appeal is presented to the Environmental Court on a de novo basis, the Court is vested with jurisdiction over all issues concerning a permit application that have been preserved for appeal in the appellant's Statement of Questions.  V.R.E.C.P. 5(f); 10 V.S.A. § 8504(h).  Appellants' Statement of Questions[9] is succinct, yet broadly

---

[9]  After discovery revealed the discrepancy concerning the easterly boundary discussed earlier in this decision, Appellants filed a "Statement of Additional Question" to which Applicant objected by way of an opposition filing dated May 31, 2005.  The Court will allow the filing of the additional Question to stand, as it appears more in the form of an expansion of Appellants' earlier Question #2 as to whether Applicant's plan requires a variance.

worded. Thus, to the extent we have not already addressed the applicable ordinance requirements for Applicant's proposed development, we do so here.

Regulations §§ 354 and 355 require proposed development to respect front, side and rear setbacks of no less than 35 feet and shoreline setbacks of 50 feet. Applicant's revised site plan represents that the dwelling and its septic system will be at least 68 feet from the ordinary and mean high water mark of the Lake and at least 80 feet from the side yard boundary shared with the Dandurands. Thus, the proposed development complies with these setback provisions.

Given that the Murphy parcel has no frontage on Everest Road and that its frontage is on the shoreline, we conclude that its easterly boundary represents its rear yard. Its northerly boundary abuts Appellants' property. The setbacks which adjoin the rear yard and the side yard shared with Appellants are less than the minimums established in Regulations §§ 354 and 355. However, Regulation § 631 provides that side and rear setback minimums for lawful pre-existing small lots upon which single family uses are proposed "shall be subject to 15 foot minimum[s.]" Given that Applicant proposes to use the lot for a single family residence, these reduced side and rear setback minimums apply. We therefore find that that the proposed setbacks are in compliance with all applicable provisions of the Regulations.

We have already determined that the proposed structure's height, septic system and limits of ground cover disturbance are all in conformance with the applicable Regulations provisions. We are not aware of any other aspects of Applicant's proposed development that have been challenged in this proceeding.

For all the above reasons, we find that Applicant's proposed development of the Murphy lot, as represented in the revised site plan, is in compliance with all applicable provisions of the Milton Zoning Regulations. Appellants' appeal is therefore denied.

The Milton Zoning Administrator is directed to issue a new zoning permit[10] for the revised project in conformance with this Decision.

Done at Berlin, Vermont this 28th day of April, 2006.

_____
Thomas S. Durkin, Environmental Judge

---

[10] Because this is a de novo appeal on a revised site plan, it does not appear appropriate to "affirm" the original permit issued by the ZA.