STATE OF VERMONT
SUPERIOR COURT — ENVIRONMENTAL DIVISION

|  |  |  |
|---|---|---|
| | } | |
| In re Toor & Toor Living Trust NOV | } | Docket No. 18-1-10 Vtec |
| | } | |
| (Appeal from Grand Isle Development | } | |
| Review Board determination) | } | |
| | } | |

## Decision on Cross-Motions for Summary Judgment

On appeal before the Court is a decision by the Town of Grand Isle ("Town") Development Review Board ("DRB") upholding a Notice of Violation issued by the Town of Grand Isle Zoning Administrator ("ZA") against John and Margaret Toor, co-trustees of the Toor Living Trust ("Appellants").[1] The DRB determined that between July 18, 2009 and October 14, 2009 Appellants changed the use of their property from its permitted use as a single-family dwelling to a different use without seeking a zoning permit, a violation of the Grand Isle Zoning Bylaws and Subdivision Regulations ("Bylaws"). Appellants appeal this determination.

Appellants are represented in these proceedings by Thomas F. Heilmann, Esq.; the Town is represented by John H. Lesch, Esq.; and the Point Farm Landowners Association and twelve of its individual members[2] are interested persons represented by Christopher D. Roy, Esq. Pending before the Court are cross-motions for summary judgment filed by Appellants and the Town.[3] The interested persons have collectively submitted a responsive memorandum to these cross-motions. Also pending before the Court is a motion for attorney's fees and

---

[1] Mr. & Mrs. Toor hold legal title, as co-trustees, to the property which is the subject of the Town's notice of violation.

[2] These members include Thomas and Jeanne Jagielsk, Zave Aberman, Bill and Helen Walsh, David DeSarno, the Estate of Barbara Irwin, Charles and Luisa Finberg, Tonya and Michael Placke, and Joan Wheeler.

[3] The Town indicates that it did not intend for its memorandum in opposition to Appellants' motion to be construed as a "motion" for summary judgment, but the very filings submitted by the Town request the "Entry of Summary Judgment." (See Letter to Court from John H. Klesch, Esq., filed Dec. 29, 2010; Resp. to Mot. for Summ. J. and Req. for Entry of Summ. J., filed Nov. 24, 2010). We therefore regard the Town's filing as a request for entry of summary judgment. We also conclude that the characterization of the Town's filing has no procedural impact on this appeal, since the applicable Civil Procedure Rules authorize trial courts, when the facts and law allow, to enter summary judgment in favor of any party. V.R.C.P. 56 (c)(3).

an associated motion to strike a document, both of which were filed by the Town, are opposed by Appellants, and are addressed in a separate Entry Order that accompanies this Decision.

## Factual Background

For the sole purpose of putting the pending motions into context, we recite the following facts, which we understand to be undisputed unless otherwise noted:

1. Appellants own a five-bedroom house on three acres at 10 Ladd Point in the Town's Residential Shoreline Zoning District ("RS District").

2. Appellant's house consists of five bedrooms, a kitchen, a dining room, a living room, a TV room, a basement with a bunk room, four-and-a-half bathrooms, a porch and deck, and a one-car garage.

3. Prior to June, 2009, and throughout the period of these proceedings, Appellants' house was permitted as a single-family dwelling.

4. Between June 5, 2009 and October 13, 2009 Appellants rented their house to eleven different groups of 8 to 17 individuals for durations of time ranging from 2 to 14 nights. Ten of these groups rented the house between July 18, 2009 and October 13, 2009. No evidence was presented that any of these renters were related to Appellants or regarded as members of Appellants' family. Use of the property by these groups was in the nature of vacation rentals and, less frequently, for special occasions.

5. Appellants received payment from each group of renters and charged each an additional 9% to account for the Vermont Rooms & Meals Tax. Appellants also charged most of their renters a cleaning fee of either $200.00 or $250.00.

6. On September 4, 2009, the ZA issued a Notice of Violation to Appellants, having concluded that Appellants had changed the use of their property without seeking a new zoning permit, thereby violating § 2.4 of the Bylaws.

7. Appellants appealed the ZA determination. By decision dated December 29, 2009, the Town's DRB affirmed the Notice of Violation for the period from July 18,

2009 to October 14, 2009.[4]  Appellants thereafter filed a timely appeal with this Court.

## Discussion

Appellants own a house at 10 Ladd Point in the RS District that is currently permitted for use as a single-family dwelling.  The house contains five bedrooms plus a bunk room in the basement that provides additional sleeping space.  The house also contains a kitchen, a dining room, a living room, a TV room, four-and-a-half bathrooms, a porch and deck, and a one-car garage.

On September 4, 2009 the ZA issued a Notice of Violation against Appellants, concluding that they had changed the use of their property from a single-family dwelling without first seeking a new zoning permit as required by Bylaws § 2.4.  On December 29, 2009, the DRB denied Appellants' appeal and affirmed the ZA's Notice of Violation for the period from July 18, 2009 to October 14, 2009 after determining that Appellants had not used their property as a single-family dwelling during that period.  The DRB also concluded that a violation existed regardless of the type of use to which Appellants had changed their property.  Appellants now appeal the DRB determination, questioning their need to seek a new zoning permit.  Both the Town and Appellants have moved for summary judgment.

In this de novo appeal we may grant summary judgment only if the record before us shows that "there is no genuine issue as to any material fact" and that one of the parties is "entitled to judgment as a matter of law."  V.R.C.P. Rule 56(c)(3); Robertson v. Mylan Labs., Inc., 2004 VT 15, ¶ 15, 176 Vt. 356.  In determining whether there is a triable issue, the Court is directed to "accept as true the allegations made in opposition to the motion for summary judgment, so long as they are supported by affidavits or other evidentiary material," and give the non-moving party the benefit of all reasonable doubts and inferences.  Id. (citations omitted).  However, when the non-moving party bears the burden of

---

[4] The final rental date stated in the Notice of Violation is October 14, 2009 although the parties agree, in their filings with the Court, that the final rental date is October 13, 2009. (See Town's Resp. to Mot. for Summ. J. and Req. for Entry of Summ. J. 1; Appellants' Statement of Material Facts ¶ 9, filed Aug. 31, 2010; Toor Aff. ¶ 33, Ex. E, filed Aug. 31, 2010.)  This discrepancy is addressed below.

proof at trial, it is that party who must "persuade the court that there is a triable issue of fact." See Boulton v. CLD Consulting Eng'rs, 2003 VT 72, ¶ 5, 175 Vt. 413 (quoting Ross v. Times Mirror, Inc., 164 Vt. 13, 18 (1995)). In a case such as this, where a town is defending a challenged notice of alleged zoning violation, the town bears the burden of proof. These standards guide our decision below.

Appellants contend that they are entitled to summary judgment because the Town will not be able to prove at trial that Appellants violated the Bylaws through renting their property to groups of individuals during the months of June, 2009 through October, 2009.[5] Appellants specifically maintain that their property was designed as a single-family dwelling, that under the Bylaws the design of their house is as important as its use, and that renting their property to groups of individuals did not constitute a change in its use that triggered the need for a new zoning permit.

The Town argues, in opposition, that the rental of Appellant's property to the groups of individuals listed in Appellant's filings does not fall within the Bylaw's definition of use of property as a single-family dwelling. Thus, the Town maintains, Appellants changed the use of their property, thereby triggering the need for a new zoning permit, and violated the Bylaws by not obtaining the needed new permit.

When interpreting municipal bylaws, we apply the same principles of construction as we apply to legislative statutes. In re Vt. Nat'l Bank, 157 Vt. 306, 312 (1991). That is, we look to the ordinary meaning of the bylaw's plain language as well as consider the "whole of the ordinance and try to give effect to every part." Id. We are cautioned not to accept the ordinary meaning if it would make the bylaw ineffective or create irrational results. Town of Killington v. State, 172 Vt. 182, 189 (2001). When the bylaw's language is ambiguous or, when interpretation involves a close call, we are directed to defer to the interpretation of the bylaw by

---

[5] The parties do not contest that Appellants rented their house, for a rental fee, to groups of individuals during the months of June, 2009 through October, 2009; the Town does not dispute the list of renters submitted by Appellant. (See Appellants' Statement of Material Facts ¶ 9, filed Aug. 31, 2010; Toor Aff. ¶ 33, Ex. E, filed Aug. 31, 2010; Resp. to Mot. for Summ. J. and Req. for Entry of Summ. J. 1–2, filed Nov. 24, 2010.) While the parties dispute the applicability of how these renters used the property, no party offers a dispute of the characterization of how Appellants used the property during this time period: as income-producing short-term rental property.

4

the zoning board and staff, provided it is permissible. See In re Korbet, 2005 VT 7, ¶ 10, 178 Vt. 459 (mem.); In re Smith, 169 Vt. 162, 169 (1999); In re Duncan, 155 Vt. 402, 408 (1990). The weight to which we give this interpretation, however, depends on the extent to which the board and staff have provided an explanation of their rationale and have demonstrated that they have applied the interpretation consistently. Korbet, 2005 VT 7, ¶ 10.

Section 3.2.2 of the Bylaws includes tables listing the "uses and structures allowable" in each zoning district that the Town has established. Bylaws § 3.2.1–3.2.2. Section 3.2.2.6 establishes the use restrictions for the RS District, the district in which Appellants property is located. Included in § 3.2.2.6 is a table with two columns, one labeled "conditional uses" and the other labeled "permitted uses" and including the phrase "[s]ingle-family dwelling," among other listed permitted uses. Bylaws § 3.2.2.6. The term "dwelling" is defined in the Bylaws as "[a] building designed or used as the seasonal or permanent living quarters for one (1) or more families (one (1) family domiciled per dwelling unit)." Bylaws § 8 (emphasis added). The term "dwelling, single family" is separately defined as "[l]iving quarters with cooking, sleeping and sanitary facilities provided within a dwelling unit for the use of a single family maintaining a household." Id (emphasis added).

While Appellants direct the Court to the definition of dwelling as inclusive of both buildings designed or used as living quarters for families, whether Appellants' house is designed in such a way as to constitute a dwelling is not dispositive of whether Appellants are using the structure in a way allowed in the RS District. The plain language of § 3.2.2.6 labels a single-family dwelling as a type of "permitted use" in the RS District; this provision makes no mention of permitted structures. To interpret the term "single-family dwelling" from § 3.2.2.6 to include structures designed as such but used for other purposes would render it ineffective for its stated purpose: to define permitted land "uses." For example, a property owner could put their "single-family dwelling" to any use, under Appellants' line of reasoning. Adopting Appellants' definition would, in effect, allow a property owner to use a structure designed as a single-family dwelling in any way imaginable, regardless of what uses the Town chose to permit or restrict

in the respective zoning district. The established rules of interpretation prohibit us from adopting such an interpretation. See Town of Killington, 172 Vt. at 189.

Having concluded that the term "single-family dwelling" as used in § 3.2.2.6 constitutes a building used as living quarters for one family, rather than just designed as such, we turn now to the question of whether the use to which Appellants put their property constitutes use as a single-family dwelling, or resulted in a change of use that triggered the need for a new zoning permit. In order to commence "land development" in the Town, a property owner must first seek a permit from the ZA. See 24 V.S.A. § 4449 ("No land development may be commenced . . . without a permit issued by the administrative officer."); Bylaws §§ 2.4 ("No land development may commence unless it is in compliance with all regulations and provisions of this Bylaw. Any land development not authorized under this Bylaw is prohibited."), 2.9 ("A building permit, issued by the [ZA], is required to . . . change [a structure's] use . . . ."). A "change in the use," as the phrase is used in both the enabling statute and the Bylaws, constitutes one type of land development that triggers the need for a new zoning permit. 24 V.S.A. §4303(10) (defining "land development"); Bylaws § 8 (defining "development").

The Town and Appellants disagree about whether the rental of Appellants' property for short periods of time to the groups of individuals listed in Appellants' filings constitutes a change in the use of their property from that of a single-family dwelling. If the rental of Appellant's property qualifies as use as a single-family dwelling, Appellants cannot be said to have changed the use of their property and the Notice of Violation must be vacated.

Appellants and the Town agree that between July 18, 2009 and October 13, 2009 Appellants rented their house to ten different groups of 8 to 17 individuals for durations of time ranging from 2 to 14 nights. (See Appellants' Statement of Material Facts ¶ 9, filed Aug. 31, 2010; Toor Aff. ¶ 33, Ex. E, filed Aug. 31, 2010; Town's Resp. to Mot. for Summ. J. and Req. for Entry of Summ. J. 1–2, filed Nov. 24, 2010.) The parties also agree that Appellants received remuneration from the renters, charged them an additional 9% to account for the Vermont Rooms & Meals Tax, and charged most of them a cleaning fee amounting to $200.00 or $250.00. (See Appellants' Statement of Material Facts ¶ 9; Town's Resp. to Mot.

6

for Summ. J. and Req. for Entry of Summ. J. 1–2; Appellants' Rule 56(c)(2) Statement of Material Facts 1–2, Attach. A ¶ 4, filed Dec. 27, 2010; Town's Rule 56(c)(2) Statement of Undisputed Facts ¶¶ 4–5, filed Nov. 24, 2010.) These undisputed facts are sufficient to warrant judgment in favor of the Town, as further explained below.

The definition of "dwelling, single family" in the Bylaws refers to "the use of a single family maintaining a household unit." Byalws § 8. Under the definition of "dwelling," the Bylaws define family as "one (1) or more persons living as a household (dwelling) unit, but not including individuals or groups occupying rooming and boarding houses, clubs, motels or hotels." Id. Household unit is not defined in the Bylaws, although Black's Law Dictionary defines household in general terms, relating the term back to a family. (9th ed. 2009) (defining "household" as "1. A family living together. 2. A group of people who dwell under the same roof. Cf. FAMILY. 3. The contents of a house.").

Despite the lack of further clarification in the Bylaws, it appears conclusive to the Court that the use to which Appellants were putting their property from July to October, 2009, as an income-producing short-term rental, does not fit within the Bylaws' definition of single-family dwelling use. Appellants, as the property owners, received payment in exchange for allowing ten distinct groups of individuals to stay on their property for durations of two weeks or less, and to make use of the property for vacations or special occasions. The numerous financial relationships Appellants formed via receipt of payments from each group of individuals; the impermanence in composition of the individuals staying on Appellants' property; and the short duration and holiday nature of each groups' stay cannot reasonably be said to be aspects of the type of use the Bylaws contemplate as use by a single family "living as a household . . . unit."

Based on the undisputed facts before us, even when viewing them in a light most favorable to Appellants, we find that between June, 2009 and October, 2009 Appellants changed the use of their property from its permitted use as a single-family dwelling to some other use, by both them (as income-producing rental property) and their tenants (as short-term vacation and holiday rentals).

7

Appellants have failed to present a triable issue of fact. We therefore conclude that the Town is entitled to judgment as a matter of law.

Although the Town and Appellants spend a great deal of time in their filings discussing the character of each rental group, and the DRB did so as well in its decision, we find it unnecessary to complete a similar analysis. Our conclusion that Appellants changed the use of their property remains even if we assume, as Appellants argue, that each group of renters lived together as a household unit while staying at Appellants' property. (See Appellants Memo. of Law in Support of Mot. for Summ. J. 9, filed Aug. 31, 2010.) The proper inquiry is whether the character of the multiple rental groups' occupancy, as a whole, including the duration of their stays, and the sum of Appellants' financial relationships with the groups, constitutes use as a single-family dwelling, as that term is used in the Bylaws. We conclude that it does not.

We also decline to rest our conclusion on a deference to the DRB's interpretation of the Bylaws because we have found the term single-family dwelling to be unambiguous as it is used in the Bylaws. Further, it is unclear whether the DRB has previously applied the definition of single-family dwelling that it asserts in its December 27, 2009 determination; the Town has not submitted evidence to this effect. We reach the same ultimate conclusion as the DRB, however: that Appellants violated the Bylaws by changing the use of their property to an income-producing short-term rental without first obtaining a new zoning permit.

Because Appellants changed the use of their property, the Town's Notice of Violation is hereby **AFFIRMED** with one minor edit—that the violation period runs from July 18, 2009 to October 13, 2009 rather than October 14, 2009.[6] Summary judgment is **GRANTED** in favor of the Town on all of the Questions in Appellants' Statement of Questions. Appellants' motion for summary judgment is **DENIED** on all of the Questions.

---

[6] The Town states that it does not dispute the factual accuracy of Appellants' Statement of Material Facts. (See Resp. to Mot. for Summ. J. and Req. for Entry of Summ. J. 1, filed Nov. 24, 2010.) Consequently, the Court accepts the dates, including a final rental date of October 13, 2009, that Appellants submit in association with their list of renters. (See Appellants' Statement of Material Facts ¶ 9, filed Aug. 31, 2010; Toor Aff. ¶ 33, Ex. E, filed Aug. 31, 2010.)

## Conclusion

For all the reasons more fully discussed above, we conclude that the Appellants changed the use of their property from use as a single-family dwelling for the period from July 18, 2009 through October 13, 2009. The Notice of Violation is hereby **AFFIRMED** with the minor edit that the violation period only runs until October 13, 2009 rather than October 14, 2009. The Town's motion for summary judgment is **GRANTED**, thereby concluding this appeal; Appellants' motion for summary judgment is **DENIED**.

The Town's pending motion for attorney's fees and motion to strike a document are addressed in a separate Entry Order, issued together with this Decision.

This completes all pending matters concerning this appeal. A Judgment Order accompanies this Decision.

Done at Newfane, Vermont, this 31st day of January 2011.

_____
Thomas S. Durkin, Judge

9