### In re Appeal of John Miller and Maureen Sheedy

[742 A.2d 1219]

No. 97-463

Present: Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.

Opinion Filed October 8, 1999

*John Miller* and *Maureen Sheedy*, pro se, Montpelier, Appellants.

*Robert Halpert* of *Paterson & Walke, P.C.*, Montpelier, for Appellees.

**Dooley, J.** Appellants John Miller and Maureen Sheedy appeal from decisions of the Vermont Environmental Court (a) approving a conditional use zoning permit for applicant Terrence Shannon to develop as parking a part of his lot adjoining his convenience store, Meadow Mart, in the City of Montpelier, and (b) dismissing as untimely appellants' appeal of site plan approval of the parking project by the Montpelier Planning Commission. Appellants argue that the parking project does not meet certain conditional use standards and violates city setback requirements, and that the court erred in one of its permit conditions and in holding that the site plan appeal was untimely. We affirm the grant of the conditional use permit, and reverse and remand the decision to dismiss the site plan appeal.

Applicant Terrence Shannon owns a convenience store at 284 Elm Street in the City of Montpelier. He purchased the store and lot in 1990. A convenience store has existed on the lot since before 1973, the effective date of zoning in Montpelier.

In 1995, applicant purchased 282 Elm Street, an adjoining lot to the west. The lot had been used for residential purposes, at one point by former owners of the convenience store. At the time applicant purchased the lot, it contained the foundation for a mobile home, but the home had been removed.

Immediately to the west of 282 Elm Street, on the corner of Vine and Elm Streets, is a residence owned by the Bernard Neill Trust. The trust has participated in this dispute before the Montpelier Zoning Board and Planning Commission and before the Environmental Court, but not in this Court. Throughout, the trust has opposed applicant's development plans.

Behind the Neill residence, facing Vine Street, are two residences on one lot owned by appellants and used as rental properties. The lot is quite deep so that it abuts both of applicant's lots at 282 and 284 Elm Street, and the residence at 7 Vine Street lies directly behind these lots.

After adding gravel so that the grade of the 282 Elm Street lot was raised to that of the top of the mobile home foundation, applicant sought conditional use and site plan approval to use 282 Elm Street as a parking lot for the convenience store and to reconfigure the parking on 284 Elm Street. He also sought a variance from the rear setback requirement in order to add a storage room to the back of the store.

Appellants sought from the zoning administrator a ruling that the area of 282 Elm Street to the front of the former mobile home was not grandfathered for parking in connection with the store and an enforcement action to remove a floodlight fixture. The Montpelier planning and zoning bodies and officers ruled for applicant, and the various rulings were appealed to the Environmental Court.

The Environmental Court ruled that the lots had merged and characterized the main application as for an accessory use, that is, parking for patrons of the convenience store. Because a convenience store is a conditional use in the district involved, the court held that the accessory use had to meet the conditional use standards under the Montpelier zoning ordinance. It found that the store, with an expanded and reconfigured parking lot, would not increase the number of customers or the number of deliveries of products for sale in the store. It did find, however, that the added space allowed delivery trucks to drive directly into the parking area so they would come much closer to the Vine Street building.

The court found that the added parking could meet the conditional use standards if the design minimized any adverse impacts from the use on the surrounding residential properties. The court concluded, however, that it could not approve the proposed plan because the document showing the design was incomplete and inaccurate and "the proposal fails to address features and conditions which could minimize the effect of the redesigned parking area on the surrounding neighborhood, including hours of operation, hours of delivery, and the direction of delivery vehicles, and requirements regarding snow plowing, although the Applicant's memorandum suggests that delivery hours of 6:00 A.M. to 6:30 P.M. would be acceptable." Accordingly, it granted the application to use 282 Elm Street for accessory parking, but denied approval of applicant's design, allowing applicant to submit a revised plan to the Montpelier Zoning Board and Planning Commission.

On the other issues presented, the court denied applicant's request for a variance to erect an addition on the store for storage, and granted appellants' request for a declaratory ruling that use of 282 Elm Street, between the street and the mobile home foundation, for parking for the store was not grandfathered. The court also ruled that the floodlight met performance standards of the zoning ordinance and refused to order its removal.

On remand, applicant clarified his plan and detailed the steps he would take to buffer activities on his lot from the neighboring lots and

houses. The zoning board again granted conditional use approval, and the planning commission granted site plan approval. On appeal, the Environmental Court affirmed the decision to grant conditional use approval, and held that appellants' appeal of the site plan approval was untimely. Appellants appeal to this Court raising six issues: (1) unless applicant seeks and obtains conditional use approval for the store, as well as the parking area, the development is an illegal expansion of a nonconforming use; (2) the proposal does not meet the conditional use standard that it not "adversely affect the character of the area affected"; (3) the proposal does not meet other conditional use and zoning standards; (4) the court improperly delegated the power to make approval conditions to the zoning board; (5) the court improperly applied the rear setback requirement; and (6) appellants' appeal from the planning commission was timely and, in any event, the court should not have allowed the untimely motion to dismiss the appeal.

## I.

Appellants first argue that applicant's proposal to use 282 Elm Street as parking is an improper expansion of a nonconforming use. Their position is that the preexisting store is a nonconforming use because convenience stores are allowed only as conditional uses in the district and the store has not gone through conditional use review. They argue that because applicant failed to seek conditional use approval for the combined 282 and 284 Elm Street lot and all its uses, and the court failed to consider the combined lot, the permit is improper.

Although appellants initially claimed that applicant's proposal involved an improper expansion of a nonconforming use, we cannot find that this claim included the ground it is now asserting. Indeed, in their rebuttal memorandum to the court, appellants stated: "The court need not consider whether the existing store promotes the residential character of the neighborhood. The issue at hand is whether the new use (a parking lot) promotes the residential character." In their legal memorandum, appellants stated, "since June of 1995, we have not opposed the concept of a parking lot on 282 Elm Street nor sought in any manner to block any reasonable development of the property." In view of appellants' statements, the Environmental Court never addressed the argument appellants make to this Court, nor did appellants raise it in the second appeal to the

Environmental Court. We may not consider an appeal issue that was not raised in the trial court. See *Town of Hinesburg v. Dunkling*, 167 Vt. 514, 523, 711 A.2d 1163, 1169 (1998). We conclude that appellants have not preserved this issue, and we decline to reach it.

## II.

Appellants' second argument in relation to the zoning permit is that the applicant's proposal does not meet one of the statutory conditional use standards, as well as a related standard in the Montpelier zoning ordinance. Section 4407(2) of Title 24 contains five general conditional use standards that are applicable in any community, whether or not specifically enumerated in the zoning ordinance. See *In re White*, 155 Vt. 612, 618-19, 587 A.2d 928, 931-32 (1990). One requires that the proposed conditional use "shall not adversely affect . . . [t]he character of the area affected." 24 V.S.A. § 4407(2)(B). Montpelier's standard applies to "convenience commercial conditional uses" and requires that they "promote the residential character of the neighborhood by serving the convenience of neighborhood residents without adversely affecting that residential character." City of Montpelier Zoning Regulations § 504(H)(4). Applicant's store is a convenience commercial use. See *id.* § 203 (defining "convenience commercial").

We have held that the adverse effect test must be applied reasonably to prohibit only substantial and material adverse effects. See *In re Walker*, 156 Vt. 639, 639, 588 A.2d 1058, 1059 (1991) (mem.). We uphold the Environmental Court's determination of whether there is a sufficient adverse effect unless clearly erroneous. See *In re Gaboriault*, 167 Vt. 583, 585, 704 A.2d 1163, 1166 (1997) (mem.).

In its 1996 order, the Environmental Court held:

> We cannot find that an expansion of the parking lot area into the former 282 Elm Street portion of the merged lot in principle would erode the established character of the neighborhood, especially if it were well-defined, well-designed and well-landscaped. That is, the proposed change in *use* of the 282 Elm Street portion of the merged lot, from residential to an accessory parking use to a convenience commercial use, does not necessarily erode the residential character of the neighborhood. However, to be approved, its design must minimize any adverse impacts from the use on the surrounding residential properties.

This conclusion was based, in large part, on its finding that the expansion and reconfiguration of the parking would not increase the

store's inventory, the number of truck deliveries, or the number of customers.

In its 1997 findings, the court reiterated its earlier finding, specifically finding that the expanded parking would not increase the traffic to the store. The court concluded:

> We cannot conclude from the evidence that the parking proposal will adversely affect . . . the surrounding character or the residential character of the neighborhood. The residential character of the neighborhood remains an older residential neighborhood with some mixed residential and commercial uses on the Elm Street side of the neighborhood, and that will be true after the proposal is put into place as it was before. In fact, with the landscaping as now proposed, and the design of the parking locations, the proposal improves the visual and use compatibility of the merged lot with the older residential neighborhood surrounding it.

Much of appellants' disagreement with the court's conclusion derives from their view that the parking is intended to draw more motorists with no connection to the neighborhood into the store. The short answer to this argument is that the court found against appellants' view in its determination of the purpose and effect of the parking expansion. The court's findings are supported by applicant's evidence, albeit disputed by appellants, and are therefore not clearly erroneous. See *In re Meaker*, 156 Vt. 182, 185, 588 A.2d 1362, 1363 (1991); *Stevens v. Essex Jct. Zoning Bd.*, 139 Vt. 297, 303, 428 A.2d 1100, 1103 (1981) (conditional use findings, even if controversial, must be upheld unless clearly erroneous).

■ The other major point of disagreement involves the definition of the "area affected." See 24 V.S.A. § 4407(2)(B). The court found that area affected by the development proposal was the surrounding residential neighborhood. Relying on *In re Gaboriault*, appellants argue that the area affected should consist only of the Neill house on Elm Street and the two abutting Vine Street residences. We do not believe *Gaboriault* helps appellants' position. *Gaboriault* involved a new school parking lot, and the town argued that the area affected should be construed to include the entire zoning district, rather than only the adjacent nineteen-resident residential neighborhood. We affirmed the court's decision to consider the residential neighborhood the area affected. *Gaboriault*, 167 Vt. at 585, 704 A.2d at 1165. Here,

appellants want to define the area affected as only a small part of a residential neighborhood, a far narrower definition than that in *Gaboriault*. As in *Gaboriault*, we affirm the court's determination of the area affected as not clearly erroneous. See *id.*

## III.

Next, appellants make a number of arguments about the failure of the proposal to meet performance and other standards of the zoning ordinance. These are related to conditional use approval because the development may not "adversely affect . . . [b]ylaws then in effect." 24 V.S.A. § 4407(2)(D). We take these in the order presented.

A.  Glare: One of appellants' major concerns is that the glare from headlights of cars entering and leaving the parking lot will penetrate the windows of 7 Vine Street and interfere with the residential use of that home. The Montpelier zoning ordinance establishes as a performance standard that a proposed use may not "[e]mit lighting . . . which creates undue glare, which . . . [is] offensive to the neighborhood." Montpelier Zoning Regulations § 1516(6). Appellants argue that the screening applicant proposed to keep headlight glare away from 7 Vine Street is inadequate, and that the glare is "offensive to the neighborhood."

The court found that the proposed plan, as approved by the planning commission in site plan review, would not create undue glare offensive to the neighborhood compared with the glare from the former parking usage. It did, however, impose three conditions on the issuance of the zoning permit: (1) applicant must plant the screening trees approved in the site plan, maintain them and replace plantings that do not survive with trees of equivalent size; (2) five of the proposed parking spaces may not be used until the screening is installed; and (3) as of a year after the screening trees are planted, they must be sufficient to prevent direct glare into the windows and across the porch of 7 Vine Street in excess of the level created by the existing parking lot on 284 Elm Street.

As in other arguments, appellants seek to use general conditional use and performance standards to resolve impacts on one specific residential property. We believe that site plan review, not conditional use review, is the proper process to address such impacts. See 24 V.S.A. § 4407(5) (in site plan review, planning commission may impose "appropriate conditions and safeguards with respect to: the adequacy of . . . landscaping and screening"); Montpelier Zoning

Regulations § 507(A) (purpose of site plan review is "to assure the project's compatibility with its location" and "to prevent the development from resulting in significant negative impacts"). Indeed, site plan review by the Montpelier Planning Commission purports to address the adverse effect of glare and requires screening, which the planning commission deems adequate for that purpose. As discussed below, appellants may have an opportunity for Environmental Court review of the planning commission's approval of the site plan. Whether or not this occurs, we do not believe that conditional use review should be distorted to duplicate the function of site plan review.

There was conflicting evidence on the extent to which the expanded parking lot would cause glare in spite of the required screening. In view of the conflict, we cannot find clearly erroneous the court's finding that the proposal would not offend the performance standard on glare.

■ B. Liquid Waste: The plan creates an opening in the screening trees to allow applicant to plow snow into this area. Appellants argue that the snow is "liquid waste," which when melted will end up in the basement of 7 Vine Street. Appellants then argue that this liquid waste offends a performance standard, which Montpelier is required to have by state statute, 24 V.S.A. § 4407(7), but has not adopted. The short answer to this argument is that Montpelier is not required to adopt a performance standard on liquid waste. Municipalities are authorized, but not required, to adopt performance standards. See id. The statute mentions "liquid or solid refuse or wastes" as types of "dangerous or objectionable elements" that the municipality can cover with a performance standard. However, the language does not require the municipality to adopt performance standards for all, or any particular one, of the examples.[1]

C. Safety: Appellants argue that the parking plan is unsafe, particularly to pedestrians who are walking in front of the large curb cut. Again, this is primarily a site plan issue. See id. § 4407(5) (in site plan review, planning commission may impose conditions and safeguards with respect to traffic access and circulation and parking). A staff member of Montpelier's Office of Public Works testified that the proposed plan improved access and circulation and provided better

---

[1] Because of our disposition, we offer no view on whether melting snow is liquid waste within the meaning of § 4407(7).

definition for parking and pedestrian crossing in front of the store.[2] This testimony supported the court's finding that the plan would have no adverse effect on traffic on roads and highways in the vicinity. See *id.* § 4407(2)(C) (general conditional use standard).

■ D. Inadequate Screening: Appellants' belief that the proposed screening is inadequate pervades their arguments. For the reasons discussed above, this issue is an appropriate issue in site plan review. Beyond the consideration given it in determining impact on the character of the neighborhood, it is not an appropriate issue for conditional use review.[3]

E. Diesel Trucks: Appellants argue that the plan brings a large number of diesel delivery trucks close to 7 Vine Street and that the trucks are left idling while deliveries are made. The court attempted to ameliorate this complaint by requiring applicant to inform each vendor and each truck driver to avoid, if possible, turning around in the new parking area and not to leave the truck idling during deliveries. Appellants find this condition inadequate. Again, we believe the issue is one to be raised in site plan review.

## IV.

■ Fourth, appellants argue that the court abrogated its duty by delegating to the planning commission the responsibility to judge the adequacy of screening and by requiring the review only after a year. This permit condition is set out above under the issue of glare. In fact, the permit condition does not depend upon planning commission review as the court explained. By the permit condition, the court defined how the screening trees had to mature to provide screening. It noted that the planning commission could, but was not obligated to, use this standard in its own site plan review.

■ Functioning as the zoning board on appeal, the court has broad discretion in fashioning permit conditions in connection with conditional use approval. See 24 V.S.A. § 4407(2) (in granting conditional use, zoning board "may attach such additional reasonable

---

[2] Appellants contest the reliance on this evidence because the staff person is a boyhood friend of the applicant and does not have the education nor expertise of appellants' expert witnesses. These objections go to the weight of the evidence, and we will not second-guess the court's decision on what weight to give the evidence.

[3] Nor is it appropriate for the court to base its conditional use review on instances of applicant's past noncompliance with zoning requirements. See *In re Carrier,* 155 Vt. 152, 161, 582 A.2d 110, 115 (1990).

conditions and safeguards as it may deem necessary to implement the purposes of this chapter and the zoning regulations"). Although the court attached permit conditions, it remains an appellate body on zoning matters. Review of compliance and the effectiveness of conditions is appropriately left to local bodies in the first instance, with a right of appeal to the court. Thus, we do not believe the mention of planning condition review is an abuse of discretion.

Similarly, we see no abuse in the review interval. The court found that the proposal, as approved in site plan review, met the conditional use standards. That conclusion is supported by the findings, which are supported by the evidence. The court added the temporal condition to ensure that the trees provided the expected screening as they matured. We believe the condition is within its discretion.

## V.

Fifth, with respect to the zoning permit, appellants argue that the court improperly approved a plan that encroaches on the rear yard setback in violation of the zoning ordinance. This issue arises in part because the back line of applicant's combined lot is irregular, running first parallel to the street and then proceeding in towards the street at an angle and then away from the street on an angle. The required setback is 30 feet and is defined as a "space extending across the full width of the lot between the principal building and the rear lot line and measured perpendicular to the building at the closest point of the rear lot line." Montpelier Zoning Regulations § 203 (definition of "yard, rear"). The plan drew a line parallel to the irregular back line and thirty feet in from it and did not place parking within the setback area.

Appellants argue that a different setback line is required by the ordinance. Appellants' suggested line is controlled by the fact that the store already encroaches into the rear setback area and is canted in relation to the street. They draw a line through the store, thirty feet from the closest point on the rear boundary and parallel to the rear wall of the store. This line proceeds at an angle across the lot, intersecting the Neill lot line at a point that appears to be about sixty feet from the rear line.[4] As appellants acknowledge, their line eliminates quite a bit of the parking proposed on 282 Elm Street.

---

[4]We make this estimate of the effect of appellants' position based on "color plate E," which appellants filed with their brief. Applicant has moved to strike this and other color plates appellants filed because they were not contained in the record before us. The color plates are simply drawings that help us understand the findings and

We must uphold the Environmental Court's construction of the zoning ordinance unless it is clearly erroneous, arbitrary or capricious. See *In re Gaboriault*, 167 Vt. at 585, 704 A.2d at 1166. We find the ordinance language ambiguous when applied to the irregular lot line and the canted structure. Appellants' construction produces a setback zone that is not uniform and ignores the irregularity of the back line, and we can conceive of no reason for this illogical result. The court's construction is more consistent with the purpose of the setback requirement. We conclude it is not clearly erroneous.

Even if we resolved the ordinance construction issue in appellants' favor, we would not conclude that there was an ordinance violation. The zoning ordinance prohibits placement of a "structure" in any setback area and separately regulates parking in front and side, but not rear, setback areas. See Montpelier Zoning Regulations §§ 1306(B), (D). Despite appellants' creative argument that the parking lot is a "raised platform," see *id.* § 1306(B) (prohibition includes "platforms above normal grade level" as structures), because applicant raised the grade to the level of the mobile home foundation, we do not believe that a parking area is a structure. See *id.* § 203 (definition of structure as "an assembly of materials for occupancy or use, including, but not limited to, a building, mobile home, billboard, sign, wall or fence"); *In re Scheiber*, 168 Vt. 534, 536, 724 A.2d 475, 476 (1998) (under similar definition of structure, trial court properly found shooting range, consisting of earth berm backstop and shooting stand, was not a structure). Accordingly, the ordinance does not prohibit parking in the rear setback area.

## VI.

Finally, appellants contest the Environmental Court's decision to dismiss the appeal of the planning commission's site plan approval as untimely. At the outset, we agree that the applicant could file the motion to dismiss on the eve of the merits hearing because it went to the court's jurisdiction. See V.R.C.P. 12(h)(3), 76(a)(2), (3); *Poston v. Poston*, 161 Vt. 591, 592, 657 A.2d 1076, 1077 (1993) (mem.). We also agree that appellants were required to file a timely appeal from the planning commission decision although the zoning board proceedings were not yet completed. The statutes separately provide for appeals

---

arguments and do not purport to be evidence. We therefore deny applicant's motion to strike.

from the planning commission, see 24 V.S.A. § 4475, and we have treated site plan review and conditional use review as separate — albeit related — proceedings. See *Wesco, Inc. v. City of Montpelier*, 169 Vt. 520, 522-23, 739 A.2d 1241, 1243 (1999); *In re Carrier*, 155 Vt. at 161, 582 A.2d at 115 ("[W]e are not reviewing the issuance of a zoning permit; rather, we are reviewing the superior court's decision to grant site plan approval.").[5]

The court acted upon two facts: the planning commission decided to approve the site plan at its meeting of February 18, 1997; and appellants filed their notice of appeal from this decision on April 8, 1997. It held that the appeal had to be filed within thirty days of the planning commission action, see 24 V.S.A. §§ 4471 (appeals from zoning board decisions must be filed within 30 days); 4475 (planning commission appeals "shall be in the same manner as provided for appeals from a decision of the board of adjustment"), and that appellants' appeal was beyond the thirty-day period.[6]

Since the Environmental Court acted, this Court ruled on this issue in *George v. Timberlake Associates*, 169 Vt. 641, 739 A.2d 1207 (1999) (mem.). We held that the appeal period for site plan review does not commence at the time of the oral decision of the planning commission, but instead at the time of "some ministerial act we can regard as a written decision." *Id.* at 643, 739 A.2d at 1209. Because the appellant in *George* filed the appeal on the thirty-first day following the oral decision, we did not have to define exactly when the appeal period commenced to conclude the appeal was timely.

---

[5] Appellants argue that because site plan review is only a step leading to a zoning permit, appeal of the zoning permit should include the site plan decision. We doubt the assumption, because the zoning administrator could have first sent the application to the zoning board for conditional use review. See *Wesco*, 169 Vt. at 523, 739 A.2d at 1244. In any event, we do not agree with the proposed calculation. Appeals from decisions of the planning commission are governed by the procedures applicable to appeals from zoning boards. See 24 V.S.A. § 4475. Court appeal is authorized for any "decision of a board of adjustment," *id.* § 4471(a), not only for decisions granting or denying permits. Similarly, the exclusive remedy statute applies to "any decision or act taken, or any failure to act." *Id.* § 4472(a). Since the Legislature has clearly authorized appeals to be taken directly from the planning commission, we believe that the import of the exclusive remedy provision is that they must be taken from the planning commission decision.

[6] Appellants argue that even if their appeal from the planning commission was untimely, the Environmental Court had to review the site plan decision in order to make a proper conditional use decision, and the court therefore erred in excluding evidence that contested the site plan. We conclude that in the absence of an appeal the site plan decision became final and represented the proposal on which conditional use review properly proceeded. Assuming the planning commission appeal was untimely, the court did not err in excluding evidence relating only to site plan review.

The record before us does not define what action we might "regard as a written decision" taken after the oral decision and when it was taken. Appellants claim the first written action occurred on March 21, but that information is not in the record before us. Thus, although we conclude that the Environmental Court used the wrong date as the start of the appeal period, we cannot determine the correct date from the record. Therefore, we must remand the question to the Environmental Court to again determine the timeliness of appellants' appeal of site plan approval in light of *George*.

*The Environmental Court's judgment issuing a conditional use permit, with conditions, is affirmed. The court's dismissal of the appeal of the site plan approval is reversed and remanded.*