In re Appeal of Carroll (2005-421)

2007 VT 19

[Filed 09-Mar-2007]


 NOTICE: This opinion is subject to motions for reargument under
 V.R.A.P. 40 as well as formal revision before publication in the Vermont
 Reports. Readers are requested to notify the Reporter of Decisions,
 Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801 of
 any errors in order that corrections may be made before this opinion goes
 to press.


 2007 VT 19

 No. 2005-421


 In re Appeal of Patricia Carroll, et al. Supreme Court

 On Appeal from
 Environmental Court

 May Term, 2006

 Thomas S. Durkin, J.

 Norman C. Smith, Essex Junction, for Appellant Carroll.

 Dennis R. Pearson, Pro Se, Jericho, Appellant.

 Daniel P. O'Rourke and Vincent A. Paradis of Bergeron, Paradis &
 Fitzpatrick, LLP, Essex Junction, for Appellees.


 PRESENT: Reiber, C.J., Dooley, Johnson and Skoglund, JJ., and 
 Toor, Supr. J., Specially Assigned

 
 ¶ 1. DOOLEY, J. Appellant Patricia Carroll appealed to the
 Environmental Court from a decision by the Town of Jericho Development
 Review Board (DRB) approving the plan of Mary Alice Rivers and CRC Sand &
 Gravel (collectively, "developers"), for a five-lot subdivision. (FN1) The
 Environmental Court concluded that because Ms. Carroll did not participate
 in the hearing for final subdivision approval, she did not qualify as an
 interested party under 24 V.S.A. § 4465(b), and dismissed Ms. Carroll's
 appeal. We conclude that Ms. Carroll's participation in the previous
 hearings regarding the subdivision constituted adequate participation under
 the statute and reverse the Environmental Court's dismissal of her appeal. 
 
 ¶ 2. "In reviewing the trial court's disposition of a motion to
 dismiss, we assume that all pleaded factual allegations in the complaint
 are true, as well as all reasonable inferences that may be derived
 therefrom." Winfield v. State, 172 Vt. 591, 593, 779 A.2d 649, 651-52
 (2001) (mem.). Developers' request for the five-lot subdivision began with
 an application in June 2003 (FN2) seeking "sketch-plan" review of the
 subdivision. (FN3) The DRB held a hearing on July 31, 2003. Ms. Carroll's
 husband, James Carroll, was present at the July 2003 hearing and spoke
 regarding his concerns. The Carrolls jointly submitted written documents
 expressing their concerns in the form of a written response under the name
 "The Carroll Family and Friends." While some members of the DRB provided
 reactions to the proposal, no formal vote was taken on the proposal.
 
 ¶ 3. As the next step, developers sought Preliminary Plat Review for
 the five-lot subdivision. The DRB held a hearing on October 23, 2003. Ms.
 Carroll did not attend this hearing, but her husband was present and spoke
 regarding his concerns. Both Carrolls again submitted written documents
 expressing their concerns regarding the proposed subdivision under the name
 "The Carroll Family." At the close of the hearing, the DRB approved the
 proposed project as complying "with all pertinent sections of the Jericho
 Subdivision Regulations for preliminary plat review," subject to certain
 listed conditions. A written decision to the same effect was issued the
 next day.

 ¶ 4. As the third step in the development-approval process,
 developers sought Final Plat Review for the proposed subdivision on
 September 15, 2004. The DRB held a hearing on December 2, 2004. Both Ms.
 and Mr. Carroll attended. Although Mr. Carroll spoke extensively, the
 minutes do not reflect that Ms. Carroll spoke. 

 ¶ 5. In response to the motion to dismiss, Ms. Carroll submitted an
 affidavit. It indicated that Mr. Carroll "spoke from some notes we had
 prepared, and submitted to the Board, in my presence a copy of the notes he
 read from." She added that she "assisted in preparing those notes" and
 attached them to the affidavit. Finally, she stated:
 
 My husband spoke at the meeting with my permission and authority,
 and submitted written comments on his and my behalf. Because he
 presented my concerns, I did not see a reason to speak on my own
 and simply repeat what he had to say. This was particularly true
 because the Chair of the December 2, 2004 meeting specifically
 asked participants not to repeat areas already spoken of by
 others. Discussion as to content and time allocation was strictly
 controlled by the Chair, Phyl Newbeck. I felt very limited and
 wanted to respect her request.

 The DRB sent the written decision approving the final plat application on
 December 3, 2004.

 ¶ 6. Ms. Carroll subsequently filed a timely notice of appeal to the
 Environmental Court. Other parties also appealed the decision, including
 appellant Pearson; these additional appeals were filed after the thirty-day
 appeal period had expired, but within the extra time allowed for additional
 appeals by V.R.A.P. 4. (FN4) Thus, it is undisputed that these appeals are
 valid only if the Carroll appeal is valid. Developers moved to dismiss the
 appeal in the Environmental Court, relying on a recent addition to the
 appeal statute in 24 V.S.A. § 4471(a):

 An interested person who has participated in a municipal
 regulatory proceeding authorized under this title may appeal a
 decision rendered in that proceeding by an appropriate municipal
 panel to the environmental court. Participation in a local
 regulatory proceeding shall consist of offering, through oral or
 written testimony, evidence or a statement of concern related to
 the subject of the proceeding.

 Developers argued that Ms. Carroll had not participated in the municipal
 regulatory proceeding because (1) the relevant proceeding was the December
 2, 2004 hearing on the final plat application, and (2) Ms. Carroll did not
 offer evidence through testimony or a statement of concern at that hearing.

 ¶ 7. The Environmental Court agreed with developers' position and
 found that Ms. Carroll had not participated in the December 2004 hearing
 although she did participate in the hearing on the application for
 preliminary plat approval. In response to Ms. Carroll's argument that the
 preliminary plat and final plat reviews were part of one proceeding, the
 court held:
 
 Many Vermont municipalities require separate applications for
 preliminary and final site plan approval for what is essentially a
 single request from a property developer: may I be permitted to
 subdivide this property. These separate applications can often
 cause multiple filings in this Court, since appellants often file
 appeals from preliminary determinations, fearful that they would
 lose their appeal rights by waiting until the final determination
 is made. It would be procedurally more efficient, for the parties
 and this Court, if preliminary and final determinations could be
 considered as one. Unfortunately, we find no statutory authority
 to do so. Therefore, we cannot look to Ms. Carroll's
 participation in the preliminary proceeding to satisfy her
 statutory requirement of participation in the final subdivision
 approval here.

 For this reason, the court dismissed the appeal.

 ¶ 8. In the present appeal, Ms. Carroll argues that (1) the
 participation requirement of 24 V.S.A. § 4471(a) does not apply because it
 did not come into effect until July 2004 and cannot apply to a subdivision
 request filed in 2003; (2) she met the participation requirement at the
 December 2004 final plat hearing; and (3) she met the participation
 requirement at the October 2003 preliminary plat hearing and that hearing
 was part of the "municipal regulatory proceeding" as described in §
 4471(a). We directly address only the third argument and agree with her
 position. For this purpose alone, we assume that the new law applies to
 this case. 
 
 ¶ 9. Our primary task is to construe the applicable statute and
 the phrase "participated in a municipal regulatory proceeding." The proper
 construction of 24 V.S.A. § 4471 is a question of law subject to
 nondeferential and plenary review. See In re Dep't of Bldgs. & Gen.
 Servs., 2003 VT 92, ¶ 8, 176 Vt. 41, 838 A.2d 78. Our objective in
 construing a statute is to effectuate the Legislature's intent, and we look
 first to the statute's language. Springfield Terminal Ry. Co. v. Agency of
 Transp., 174 Vt. 341, 346, 816 A.2d 448, 453 (2002). We will enforce the
 plain meaning of the statutory language where the Legislature's intent is
 evident from it, Wesco, Inc. v. Sorrell, 2004 VT 102, ¶ 14, 177 Vt. 287,
 865 A.2d 350, but, if doubts exist, "the real meaning and purpose of the
 Legislature is to be sought after and, if disclosed by a fair and
 reasonable construction, it is to be given effect." Langrock v. Dep't of
 Taxes, 139 Vt. 108, 110, 423 A.2d 838, 839 (1980). The intent should be
 gathered from a consideration of "the whole statute, the subject matter,
 the effects and consequences, and the reason and spirit of the law." In re
 Wal*Mart Stores, Inc., 167 Vt. 75, 84, 702 A.2d 397, 403 (1997) (internal
 quotations and citations omitted).

 ¶ 10. In this case, the meaning of the phrase "municipal regulatory
 proceeding" is not sufficiently clear for us to decide the question based
 on the wording alone. Nor does the statute contain a definition of the key
 term, "proceeding." We are aided, however, by the nature of the
 subdivision review in the relevant statutes and ordinance provisions of the
 Town of Jericho. 

 ¶ 11. The required procedure for subdivision review, as set forth in
 24 V.S.A. § 4463, is very limited:

 Subdivision review.

 (a) Approval of plats. Before any plat is approved, a public
 hearing on the plat shall be held by the appropriate municipal
 panel after public notice. . . . 
 
 A municipality can, however, require a more extensive process. Thus, 24
 V.S.A. § 4418 provides:

 Subdivision bylaws.

 In order to guide community settlement patterns and to ensure the
 efficient extension of services, utilities, and facilities as land
 is developed, a municipality may regulate the division of a lot or
 parcel of land into two or more lots or other division of land for
 sale, development, or lease. Subdivision bylaws shall establish
 standards and procedures for approval, modification, or
 disapproval of plats of land and approval or modification of plats
 previously filed in the office of the municipal clerk or land
 records.

 . . . . 
 
 (2) Subdivision bylaws may include:

 . . . . 
 
 (B) Procedures for conceptual, preliminary, partial, and other
 reviews preceding submission of a subdivision plat, including any
 administrative reviews. (FN5) 

 The Town of Jericho has adopted a more extensive procedure than provided
 for in § 4418(2)(B). Thus, the Town of Jericho Subdivision Regulations
 require that developers first submit a preliminary plat application for a
 major subdivision. See JSR, supra note 3, art. II, § 2 ("A major
 subdivision . . . shall undergo both preliminary Plat and Final Plat review
 and approval."). The application at issue in this case is for a major
 subdivision because it contains five or more lots. Id. art. I, § 3. The
 procedural rules specify:

 Before holding the public hearing on the final plat of a major
 subdivision, the Commission (FN6) shall hold one or more hearings
 on a preliminary plat. . . . Approval of a preliminary plat shall
 not constitute approval of the subdivision. The decision on a
 preliminary plat may state specific requirements to be fulfilled
 prior to gaining approval of the final plat. Prior to approval of
 the final plat, the Commission may require additional changes or
 information as a result of further study.

 Id. art. II, § 3. The regulations define the preliminary plat in terms of
 its purpose: "to enable the subdivider to save time and expense in reaching
 general agreement with the Planning Commission as to the form of the
 subdivision and the objectives and requirements of these regulations." Id.
 art. I, § 2(17)(1b).

 ¶ 12. Our only relevant precedent is In re Miller, 170 Vt. 64,
 75-76, 742 A.2d 1219, 1227 (1999), where we concluded that site-plan review
 before the planning commission involved a separate proceeding from zoning
 review in the zoning board of adjustment although the developer needed both
 permits to proceed with the development project. In that case, the two
 proceedings were in separate adjudicatory bodies, and the developer had to
 present separate evidence to each. If the developer succeeded, each
 proceeding resulted in a separate permit. (FN7)
 
 ¶ 13. We think that in contrast to the site-plan and zoning review
 in Miller, subdivision review is one proceeding from application to
 preliminary plat review to final plat review. See Blacks's Law Dictionary
 1241 (8th ed. 2004) (defining "proceeding" as "[t]he regular and orderly
 progression of a lawsuit, including all acts and events between the time of
 commencement and the entry of judgment"). Preliminary plat review is an
 intermediate step, adopted in some municipalities, that may move the
 developer along to a subdivision permit, but does not by itself give the
 developer any approval, other than the ability to request final plat
 review. As the Jericho Subdivision Regulation makes clear, preliminary
 plat review means only that the developer and the DRB have come to a
 "general agreement" on the form of the subdivision and the effect of the
 subdivision regulation. It is fully expected that evidence provided in
 preliminary plat review will be used in determining whether to issue a
 subdivision permit and whether to impose conditions on that permit.
 
 ¶ 14. Viewing preliminary plat review and final plat review as part
 of one municipal regulatory proceeding is consistent with the apparent
 intent of the Legislature in requiring participation as a condition of the
 right to appeal. In 2004, the Legislature substantially amended the
 Municipal and Regional Planning and Development Act, Chapter 117 of Title
 24, and, in the process, made local participation a prerequisite for
 interested parties to appeal to the Environmental Court. 2003, No. 115
 (Adj. Sess.), § 107. Previously, interested party status alone was
 sufficient. See 24 V.S.A. § 4464(b)(3). Thus, under the old law,
 interested parties could appeal even though the DRB had no opportunity to
 deal with the issue causing the appeal and the developer had no opportunity
 to address the issue. By enacting the amendment, the Legislature intended
 that the interested party state his or her opposition in the local
 proceeding. 

 ¶ 15. The statutory language does not specify when the interested
 party must participate as long as it is within the proceeding. For
 subdivision proceedings, participation at preliminary plat review
 implements the intent of the Legislature, as does participation at final
 plat review. Indeed, in Jericho where preliminary plat review can lead to
 a "general agreement" between the DRB and the developer on the nature of
 the project, participation at that stage may be more critical for adjoining
 landowners who are opposed generally to the development plans, as the
 Carrolls were here. Once the proposal moves to final plat review, the
 interested parties' opposition may be too late to have any effect. Also,
 by that time, the DRB and developer are fully aware of the nature of the
 opposition of the interested party.
 
 ¶ 16. The Environmental Court appeared to recognize that
 subdivision review is essentially one proceeding, but held that it must
 find that preliminary plat and final plat review are separate proceedings
 because the interested party has a right of appeal from preliminary plat
 review. We doubt that the interested party can appeal from a decision that
 reflects only a "general agreement" between the developer and the DRB and
 that can be changed "as a result of further study," but we need not ground
 our decision on this point. The relevant statute, 24 V.S.A. § 4471(a),
 allows an interested party to "appeal a decision rendered in that
 proceeding." As we noted in In re Miller, "[c]ourt appeal is authorized
 for any 'decision of a board of adjustment,' [24 V.S.A.] § 4471(a), not
 only for decisions granting or denying permits." 170 Vt. at 76 n.5, 742
 A.2d at 1227 n.5. Nothing in the statutory language suggests that one
 proceeding ends, and another begins, solely because the DRB renders an
 appealable decision. In fact, the statutory language giving the right to
 appeal "a decision rendered in that proceeding" suggests that there can be
 more than one appealable decision within a proceeding. We do not believe
 that the appealability of preliminary plat approval, if such a right of
 appeal exists, affects whether preliminary plat and final plat approval are
 part of the same proceeding.

 ¶ 17. Developers have conceded that Ms. Carroll participated in the
 preliminary plat review hearing before the DRB, thus we need not review
 this aspect of the participation requirement. That participation gave her
 standing to appeal from the approval of the subdivision permit. The
 Environmental Court erred in dismissing the appeal. 

 Reversed. 

 FOR THE COURT:
 
 

 _______________________________________
 Associate Justice


------------------------------------------------------------------------------
 Footnotes


FN1. Appellant Dennis Pearson also filed a brief in this Court in support of
 the arguments made by Ms. Carroll.

FN2. The record indicates that developer Mary Alice Rivers submitted a
 request for approval of a six-lot subdivision earlier in 2003 and this
 proposal went through sketch-plan review in the DRB. Ms. Rivers apparently
 dropped that proposal.

FN3. The purpose of sketch-plan review is not indicated by the record, nor
 is it provided for in the Jericho Subdivision Regulations in effect at the
 time of the subdivision review in this case. See Jericho, Vt.,
 Subdivision Regulations (July 8, 1985) [hereinafter JSR],
 http://www.jerichovt.gov/ (follow "Ordinances/Local Regulations" hyperlink;
 then follow "Zoning/Subdivision Regulations" hyperlink; then follow
 "Subdivision Regulations Adopted 7/8/85" hyperlink). It is defined in the
 zoning regulations as "an informal public hearing with the Development
 Review Board to explore options in a preliminary manner with little expense
 involved," and the regulations specify that "[n]o formal decision is taken"
 and "no specific data is required." Jericho, Vt., Zoning Regulations art.
 VI, § 601.2.0, http://www.jerichovt.gov/ (follow "Ordinances/Local
 Regulations" hyperlink; then follow "Zoning/Subdivision Regulations"
 hyperlink; then follow "Jericho Zoning Regulations Adopted 12/29/03"
 hyperlink). We assume that the purpose is similar for subdivision review
 and similar to what we described in In re Champlain Oil Co. with respect to
 a sketch-plan application: that it "be submitted by a subdivider of land to
 the town planner prior to submitting an application for subdivision
 approval, for the purpose of classifications and preliminary discussion of
 the subdivision with the Planning Commission." 2004 VT 44, ¶ 12, 176 Vt.
 458, 852 A.2d 622 (internal quotations omitted).

FN4. V.R.A.P. 4 provides, in pertinent part, that "[i]f a timely notice of
 appeal is filed by a party, any other party may file and serve a notice of
 appeal within 14 days of the date on which the first notice of appeal was
 filed."

FN5. This version of the statute was added effective July 1, 2004. Prior to
 that effective date, 24 V.S.A. § 4414 provided: "Before holding such public
 hearing on a plat, the planning commission or the development review board
 may hold one or more preliminary hearings and grant preliminary approval to
 authorize the preparation of the plat for such public hearing." 1967, No.
 334 (Adj. Sess.), § 1, as amended by 1993, No. 232 (Adj. Sess.), § 6. The
 provisions are similar in substance; we do not believe that the exact
 wording affects our conclusion in this decision.

FN6. The Jericho Subdivision Regulations refer to the planning commission
 throughout. See, e.g., JSR, supra note 3, art. I, §§ 2, 3(3). Since their
 adoption, the Town has substituted the DRB to fulfill the functions of the
 planning commission and the zoning board of adjustment.

FN7. For similar reasons, the case relied upon by appellee, In re Champlain
 Oil Co., 2004 VT 44, is distinguishable from the situation before us. 
 There, the developer was pursuing a subdivision permit and a site-plan
 permit through two separate adjudicatory proceedings leading to two
 separate permits. Id. ¶ 17.