STATE OF VERMONT

ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| | } | |
| In re: Quality Market – Parnigoni Lot Parking | } | Docket No. 53-3-08 Vtec |
| (Appeal of Blackburn) | } | |
| | } | |

Decision and Order on Cross-Motions for Summary Judgment

Appellants Michael and Brandi Blackburn appealed from a decision of the Development Review Board (DRB) of the City of Barre, granting Appellee-Applicant Quality Market's application to remove an existing building on an adjacent lot and expand an existing parking lot on that adjacent lot.   Appellants are represented by David L. Grayck, Esq. and Zachary K. Griefen, Esq.; Appellee-Applicant Quality Market is represented by L. Brooke Dingledine, Esq.; and the City is represented by Oliver L. Twombly, Esq.   Appellants and Appellee-Applicant have each moved for summary judgment.  The following facts are undisputed unless otherwise noted.

Quality Market is an existing grocery store that falls within the definition of "Food Store, Small" in § 2.2.01 of the City of Barre Zoning Regulations.[1]  It is located at the address of 155 (155–159) Washington Street (Route 302) in a Planned Residential zoning district.[2]  The size of the Quality Market lot, the setbacks of its existing building,[3] the property's access to the street network, and the configuration of its on-site parking spaces have not been provided to the Court in connection with the present motions,

---

[1]  Resolving Question 2 of the Statement of Questions.
[2]  Resolving Question 3 of the Statement of Questions.
[3]   The existing Quality Market structure appears to be nonconforming at least as to the setbacks required by Article 7 for a nonresidential use, resolving Question 6 of the Statement of Questions; however, as no alterations to the building are proposed, Question 6 does not appear to be relevant to the present application.

other than as they are shown visually on an aerial photograph of unknown date attached to Appellants' reply memorandum. From a comparison of the Quality Market lot with the neighboring Parnigoni lot (known to be just under a quarter-acre in size), it is apparent that the Quality Market lot is approximately a quarter-acre in size.

Adjacent to and westerly of Quality Market, also in the Planned Residential zoning district, is a lot owned by Dr. Richard F. and Joan S. Parnigoni (the Parnigoni lot), containing an existing building with an address of 153 (151-153) Washington Street. The building houses an optometric office on the ground floor and a residential apartment upstairs. From the site plan, it appears that an attached shed or garage is also located behind the Parnigoni building, slightly closer than 15 feet from the rear boundary of the Parnigoni lot. The Parnigoni lot is approximately 10,019 square feet in area, and is configured with room for seven existing paved parking spaces outside of the garage, four of which are marked by striping, on the westerly side of the lot adjacent to the existing residential property of another neighbor (LaCroix) not involved in this appeal.

Appellants' residential property has the address of 52 Webster Street and is located adjacent to (southerly of) the rear lot line of the Parnigoni lot and to a small segment of the southwesterly corner of the rear of the existing Quality Market lot and building. Access to Appellants' property is from Webster Street.

Dr. Parnigoni acquired the Parnigoni lot in 1977, and shortly thereafter converted a then-existing first-floor apartment into a professional optometric office, from which he operated his practice continuously through at least the date of his affidavit of June 13, 2008.[4] The second floor of the building contains a residential apartment. As a permit was granted for the conversion, the office use must have been an allowed use in this

_____

[4] Resolving Question 11 of the Statement of Questions, that the use has not been discontinued.

location in 1978; information as to when that use became nonconforming in this district has not been provided to the Court in connection with the present motions.[5]

The present application was filed by Dr. Parnigoni as property owner, and by Quality Market as applicant company. The application proposes to remove the existing structures on the Parnigoni lot and to expand the existing parking lot on that lot to a total of eighteen[6] spaces, with associated proposed landscaping. It was considered by the DRB as a change in use from its existing nonconforming use as a medical/dental/optical office (and allowed residential apartment) to an allowed conditional use as a "private parking lot." As a non-residential conditional use, it requires site plan approval, § 4.4.01, as well as conditional use approval. § 4.3.

The narrative describing the proposal, submitted by Quality Market as part of the application, states that Quality Market proposes to purchase the Parnigoni lot, demolish the existing building, and expand an existing parking lot on the property. The proposed parking lot is proposed to be set back 15 feet from the Parnigoni lot's boundary with the Blackburns' lot. As depicted on the site plan, five existing mature ash trees on the Parnigoni property near the rear boundary are proposed to be removed. Four new "Red Sunset" maple trees are proposed to be planted on the neighboring Blackburn property near the Blackburn-Parnigoni lot line. Two eight-foot-tall cedar hedges are also proposed to be planted: one on the southerly edge of the parking lot facing the Blackburn lot line, and another on the Parnigoni lot's westerly boundary. Fencing is proposed to enclose the rear setback area; it is intended to

---

[5] Resolving Question 10 of the Statement of Questions.

[6] Although only the original site plan and application were provided as an exhibit, Appellee-Applicant's June 13, 2008 memorandum, at pages 3–4, suggests that Appellee-Applicant now seeks approval of the application and site plan as modified by the DRB decision, which approved only sixteen parking spaces. Appellee-Applicant has not provided a revised site plan reflecting those modifications.

exclude access to that rear setback area, except for a gate from the easterly side to allow snow storage within the rear setback area.

The parties have focused on issues to do with the fact that the existing 'small food store' use on the adjacent Quality Market lot is a nonconforming use, that is, neither a permitted nor a conditional use in the Planned Residential zoning district.[7] Information as to when the Quality Market use began in this location, and when it became nonconforming, has not been provided to the Court in connection with the present motions.[8]

The existing mixed-use optometric office and apartment on the Parnigoni lot is also a nonconforming use, as the 'medical/dental/optical office' use is neither a permitted nor a conditional use in the Planned Residential zoning district, although the apartment is an allowed residential use.[9] The use category of 'private parking lot' is a conditional use in the Planned Residential zoning district.

The proposed parking lot would be reserved for customers of Quality Market.[10] Appellants argue that it therefore should be considered as an impermissible extension or expansion of the nonconforming "small food store" use onto the adjacent lot.

Section 2.2.01 of the Zoning Regulations defines the use category of "Parking Lot, Private" (private parking lot) as "[a] use of land for the provision of parking spaces in the open air, not open to the general public." The definition does not limit the use category to those parking lots in which the spaces are individually or privately rented. Therefore, regardless of whether the parking spaces would be reserved for customers of

---

[7] Resolving Question 4 of the Statement of Questions.

[8] At least for the purposes of the present motions, Appellants do not contest that Quality Market's nonconforming use is preexisting, resolving Question 5 of the Statement of Questions.

[9] Resolving Question 9 of the Statement of Questions.

[10] Resolving the first clause of Question 7 of the Statement of Questions.

Quality Market or would be otherwise privately allocated, the proposal qualifies for consideration as a "private parking lot" use.

If the Parnigoni lot is considered as a separate lot, therefore, even though the proposed private parking lot on the Parnigoni lot is proposed to serve the Quality Market's customers, it is an allowed use in the district[11] and may be applied for as a conditional use, and for site plan approval. It falls within the definition of "Change In Use" as that term is defined in § 2.2.01 of the Zoning Regulations.[12]

Because it is a nonresidential use, however, it may require some dimensional waivers, under § 4.9, of the dimensional requirements otherwise required by Article 7 of the Zoning Regulations. No such waivers appear to have been requested in the application or noticed before the DRB; therefore they are not before the Court in the present appeal. In re Torres, 154 Vt. 233, 236 (1990) (explaining why court lacks authority to convert hearing on permitted use application to hearing on conditional use); In re Bouldin Camp – Noble Road, No. 278-11-06 Vtec, slip op. at 6 (Vt. Envtl. Ct. Apr. 23, 2007) (ruling that only the appealed-from application is before the Court) (citing In re Torres).

More importantly, the parties also have not adequately addressed the consequences of the apparent nonconformity of both lots as to lot size, as the lots are proposed to come into common ownership. While both lots are larger than the five-thousand-square-foot minimum lot size required by Article 7 for single- or two-family

---

[11] The application in In re Appeal of Miller and Sheedy, 170 Vt. 64 (1999) differed from the present application in that it involved a different municipality's zoning ordinance with different definitions and provisions, in particular regarding the "commercial parking" use category, and was submitted for an already-merged lot that included both the former grocery store lot and the adjacent former residential lot.

[12] Considering only the Parnigoni lot, the proposed project would change the nonconforming or partially nonconforming use of the Parnigoni lot to an allowed use, not a nonconforming use, resolving Question 12 of the Statement of Questions.

residential uses, they are each well below the two-acre minimum lot size required for nonresidential uses.

Section 4.8.01 allows separate preexisting undersized lots to be developed for purposes permitted in the zoning district if the parcel is at least 5,000[13] square feet in area. However, if the lots will come into common ownership, the issue of lot merger under § 4.8.02 will require analysis in order to address at least Questions 1, 7, 8 and 13 of the Statement of Questions, as it will govern whether the proposal should be considered on its merits as a private parking lot use on an adjacent lot, or whether it must instead be analyzed as a merged or combined lot.

If it is a merged or combined lot, the remaining issues in the appeal will also require resolution of whether a single lot may contain two primary or principal uses[14] (that is, the nonconforming 'small food market' use and the 'private parking lot' conditional use), or whether the parking lot must instead be analyzed as accessory to a single primary or principal nonconforming use, as argued by Appellants. The parties have not addressed in their memoranda the issue of whether the Zoning Regulations allow multiple primary or principal uses on a single lot.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that both parties' motions for summary judgment are granted in part and denied in part, as discussed above. This decision resolves Questions 2, 3, 4, 5, 6, 9, 10, 11, and 12, and the first clause of Question 7.

The remainder of Question 7, and Questions 1, 8, 13, 14, 15, 16, 17, 18 and 19, remain for trial or other resolution at the present time.

---

[13]   Note that note 1 to Article 7 refers to the requirement as 5,445 square feet (one-eighth-acre) in area.

[14]   Unlike the zoning ordinances of some other municipalities, the Zoning Regulations do not appear to include a specific prohibition on more than one primary or principal use on a single lot.

6

A telephone conference has been scheduled (see enclosed notice) to discuss whether any of the facts not provided are nevertheless undisputed, to discuss whether Appellee-Applicant wishes to proceed with the application as made (or wishes to propose any alterations in the application as to the proposed ownership of the lots or as to any requested waivers, and, if so, whether any such altered application would necessitate a remand), and to discuss the scheduling of mediation, any further motions, and trial.

Done at Berlin, Vermont, this 30th day of October, 2008.

_____
Merideth Wright
Environmental Judge