STATE OF VERMONT

ENVIRONMENTAL COURT

|  |  |
|---|---|
| | } |
| In re: Woodstock Community Trust, Inc., and | } |
| Housing Vermont - Planned Development | } Docket Nos. 263-11-06 Vtec |
| (Appeals of Roy, et al.)[1] | } and 126-6-07 Vtec |
| | } |

Decision and Order on Motions for Partial Summary Judgment and To Dismiss

In Docket No. 263-11-06 Vtec, Appellants David Roy, Richard Roy, Michael Hirschbuhl, Tod Minotti, and Mark Stanglin (Appellants) appealed from a decision of the Development Review Board (DRB) of the Town[2] of Woodstock issued on November 3, 2006. The decision first granted reconsideration (by a 5-to-2 vote) of the DRB's April 7, 2006 denial of an application submitted by Appellee-Applicants (Applicants) Woodstock Community Trust, Inc. and Housing Vermont for preliminary approval of a Planned Development[3] located at 473 Woodstock Road, and then granted preliminary approval of the application. In Docket No. 126-6-07 Vtec, the same Appellants appealed from a decision of the DRB issued on June 4, 2007, granting final approval of the application. Appellants are represented by Kaveh S. Shahi, Esq.; Appellee-Applicants are represented by Daniel C. Hershenson, Esq.; and the Town of Woodstock is represented by Todd C. Steadman, Esq.

---

[1] Please use Court's caption form for these appeals.

[2] Sometimes referred to in quotations as the "TDRB," referring to the Town DRB, presumably to distinguish it from the Village of Woodstock DRB.

[3] Initially the proposal included a community building, as well as residential buildings, making it a Planned Unit Development; in its current form it involves only residential units, making it a Planned Residential Development (PRD).

1

The application for a 36-unit PRD in multiple-unit buildings requires approval under the regulations pertaining to Planned Residential Developments (PRDs), conditional use, and site plan approval. Trial on the merits of both docket numbers has been scheduled to be held at the Windsor County Courthouse in Woodstock, Vermont, on October 16, October 17, October 18, and October 19, 2007, beginning at 9:00 a.m. each day. The trial day will conclude at 2:30 p.m. on Thursday, October 18 only; all other days will conclude at 4:30 p.m. (See August 24, 2007 hearing notice.) A site visit will be scheduled, probably at the outset of the first day of hearing, weather permitting.

In Docket No. 263-11-06 Vtec, after previous motions were decided (see decisions dated May 10, 2007 and December 5, 2006), Questions 4, 8, 9, and 10 of the Statement of Questions remained. Appellee-Applicants have now moved for summary judgment on Questions 4, 8, and 10. In Docket No. 126-6-07 Vtec, Appellants filed a revised Statement of Questions on July 20, 2007. Appellee-Applicants have now moved to clarify or strike Questions I and II; both Appellee-Applicants and Appellants have moved for summary judgment on Question III. The Town has not filed memoranda on the present round of motions.

The following facts are undisputed unless otherwise noted; in addition, the May 10, 2007 decision on summary judgment is incorporated in this decision, in that undisputed facts stated in that decision will not be repeated except as needed for clarity of this decision.

Docket No. 263-11-06 Vtec

Question 10

Question 10 of the Statement of Questions in Docket No. 263-11-06 Vtec asks "whether on de novo review the project meets the requirements for preliminary approval." While most, if not all, of the requirements for preliminary approval are also requirements for final approval, Question 10 is not precluded by the filing of Docket No. 126-6-07 Vtec.

2

As noted in In re Appeal of Carroll, 2007 VT 19, ¶¶13, 16, even though the approval process may proceed through several stages, the statute allows a party to appeal from any decision of the DRB, including a decision on sketch plan or preliminary approval. Most often, this Court will coordinate or consolidate the various appeals so as to have a single hearing, V.R.E.C.P. 2(b), but in some cases different legal issues arise in the various appeals. With respect to the present proposal, the two appeals have been set together for trial to avoid duplication of evidence, but Appellants are entitled to make their arguments in their post-trial memoranda as to the merits of the preliminary stage of this application as well as to the merits of its final stage.

Accordingly Appellee-Applicants' Motion for Summary Judgment as to Question 10 in Docket No. 263-11-06 Vtec is DENIED.

Questions 4 and 8

Question 4 asks in full: "Whether the TDRB improperly utilized the 'reconsideration' procedure to allow the applicant to circumvent the proper appeal process available under the law in connection with its decision on March 28, 2006, to deny the application for preliminary conditional use and site plan approval." Question 8 asks in full: "Whether the TDRB improperly utilized the re-hearing on 'reconsideration' procedure to allow the applicant to circumvent the proper appeal process available under the law in connection with its decision on March 28, 2006, to deny the application for preliminary conditional use and site plan approval."

Appellee-Applicant has now moved for summary judgment on Questions 4 and 8; In response, Appellants claim that summary judgment on Questions 4 and 8 should be denied, as the Court did not dismiss those questions in its May 10, 2007 decision on the motion to dismiss them. Appellants do not assert that any material facts are in dispute as to Questions 4 and 8.

In its May 10, 2007 decision, the Court ruled as follows on the Town's motion to dismiss Questions 4 and 8 of the Statement of Questions:

> In granting the remand of Docket No. 152-6-06 Vtec, the Court specifically allowed Appellants, as parties to the remanded Docket No. 152-6-06 Vtec, or to the dismissed-as-moot Docket No. 99-5-06 Vtec, to raise any issues in the present appeal that they could have raised in those two former appeals. While the Town may be correct that the motivation or intent of the DRB members is not necessarily relevant in a <u>de novo</u> appeal, Questions 4 and 8 do not focus on the motivation or intent of the DRB, rather, they raise issues of whether a DRB may reconsider a denial decision at all. These issues were within the scope of Docket No. 152-6-06 Vtec and therefore may be raised by Appellants in the present appeal. They do not entirely duplicate Question 1 or Question 9, although there is some overlap.

<u>In re: Woodstock Community Trust, Inc., and Housing Vermont Planned Unit Development (Appeal of Roy)</u>, Docket No. 263 -11-06 Vtec, slip op. at 6–7 (Vt. Envtl. Ct., May 10, 2007). The Court denied the motion to dismiss Questions 4 and 8, but specifically did not address them as motions for summary judgment, as the parties had not been given the opportunity to file memoranda directed to summary judgment. Rather, the May 10, 2007 decision specifically requested the parties to be prepared in a then-scheduled telephone conference "to discuss whether any facts are in dispute as to Questions 4, 8, and 9 of the Statement of Questions, or whether those questions may also be resolved as a matter of law." <u>Id</u>. at 18. The present motions for summary judgment with respect to Questions 4 and 8 therefore are not precluded by the May 10, 2007 ruling on the motion to dismiss those questions.

The May 10, 2007 decision in Docket No. 263-11-06 Vtec ruled, regarding Questions 1, 2, 5, and 6 of the original Statement of Questions, that the DRB had authority to reconsider its denial of preliminary approval, both when it initially decided to do so, and after remand of Docket No. 152-6-06 Vtec by this Court. That decision also discussed that the DRB had not followed proper procedure in conducting the hearing on the merits of

4

preliminary approval after its first reconsideration, Id. at 11, but determined that, after remand from this Court, it had followed proper procedures to accomplish the reconsideration of its denial of preliminary approval and its subsequent grant of preliminary approval. Id. at 12. The merits of that preliminary approval are at issue in Question 10 in Docket No. 263-11-06 Vtec.

Appellants' characterization of "the proper appeals process" seems to suggest that only the original appeal (Docket No. 99-5-06 Vtec), taken by the Applicants from the DRB's initial denial of preliminary approval (before it had been asked to reconsider that denial), was the "proper appeal process available under the law." However, once any de novo appeal reaches this Court, regardless of whether an application was granted or denied, and regardless of which party appealed, the burden remains on the applicant to demonstrate that an application meets the requirements of the zoning ordinance, on any issues raised by the appellants in their statement of questions. V.R.E.C.P. 5(f). Moreover, any party not filing an initial appeal may raise its own issues in a cross-appeal or additional appeal. V.R.E.C.P. 5(b)(2). That is, in a de novo appeal, the application arrives before this Court without any presumption in favor of the decision as made by the DRB. Accordingly, in the present instance, regardless of whether the appeal would have been taken by Applicants (from the original denial) or by Appellants (from the approval after reconsideration), the application stands before this Court in the same posture.

Thus, in Docket No. 99-5-06 Vtec, the original appeal from the DRB's original denial of preliminary approval, Applicants were the appellants and were free to bring all aspects of the application to the Court for it to rule de novo on the merits of the application. If that appeal had gone forward (instead of being withdrawn after the reconsideration was granted), the neighbors of the project could have entered their appearances, could have participated as parties, and could have come forward with evidence about the project at the trial.

5

In Docket No. 152-6-06 Vtec, Appellants' initial appeal of the DRB decision granting preliminary approval after its first reconsideration, Appellants properly raised the issue of the procedural deficiencies in the DRB's reconsideration process, as well as raising the issue of the merits of the application for preliminary approval. As discussed in the May 10, 2007 decision in the present case, if the Court had analyzed those procedural deficiencies in Docket No. 152-6-06 Vtec, it would have ruled in Appellants' favor that reconsideration had been improperly done, based on an analysis of the principles discussed in In re: Appeal of Dunn, et al., Docket No. 2-1-98 Vtec (Vt. Envtl. Ct., Mar. 8, 1999); and see Nash v. Warren Zoning Board of Adjustment, 153 Vt. 108, 114 (1989) (allowing a municipal zoning panel to reopen a proceeding sua sponte (but within the thirty-day appeal period), to hold a newly-warned hearing to receive new evidence, and to issue a new decision). The result in Docket No. 152-6-06 Vtec would have been an order from this Court vacating the DRB decision on the merits of the reopened preliminary approval decision and remanding the entire matter to the DRB for it properly to notice and conduct that hearing, 24 V.S.A. §4464(a)(5), last sentence, after which the appeal on the merits could have been appealed to this Court, as it has been in Docket No. 263-11-06 Vtec.

As discussed in the May 10, 2007 decision, however, Docket No. 152-6-06 Vtec was subject to V.R.E.C.P. 5(i), which specifically provides that "[a]t the request of the tribunal appealed from, the court, at any time prior to judgment, may remand the case to that tribunal for its reconsideration." The Vermont Supreme Court's adoption of V.R.E.C.P. 5(i) is consistent with its analysis in In re Maple Tree Place, 156 Vt. 494, 499–500 (1991), that it is a better practice to allow a municipal panel to correct its own mistakes in the first instance, rather than to require such mistakes to be dealt with by the court on appeal, especially as the Court is "beyond its role as an appellate tribunal, even under a de novo review standard, to start addressing new issues never presented to the [municipal panel] and on which interested persons have not spoken in the local process." Id. at 500. Such a

6

remand simply returns municipal panel's proceedings on the application to the point before it would have voted on the merits of the application. Particularly when an application is in its "preliminary" phase, a remand may allow a municipal panel to complete its responsibilities before the issues come before the Court, and therefore may reduce the number of intermediate appeals taken during successive phases of a single proceeding.

Because V.R.E.C.P. 5(i) explicitly provides for a remand for reconsideration at the request of the DRB "at any time prior to judgment," the fact that the DRB in the present case performed the reconsideration and decided to grant preliminary approval did not "circumvent" the "proper appeal process;" rather, remand for reconsideration pursuant to V.R.E.C.P. 5(i) is now an integral part of that "proper appeal process."

Accordingly, Appellee-Applicants' Motion for Summary Judgment as to Questions 4 and 8 in Docket No. 263-11-06 is GRANTED.

Docket No. 126-6-07 Vtec

Question II

At a telephone hearing held on an audio-taped record on October 1, 2007, Appellants agreed that no questions are raised by Question II that are not already raised in the multiple sections of Question I. Accordingly, Question II of the Statement of Questions is DISMISSED as duplicating Question I.

Question III

Appellee-Applicants have moved to dismiss Question III, which asks in full "[w]hether this appeal may proceed before conditions imposed by the TDRB have been met by the applicants." Appellants have moved for summary judgment on Question III as to

Condition 1, which requires[4] that "[b]efore construction commences all state and other required permits shall be obtained, [and] a completed state[-]approved storm water design shall be reviewed and approved by the TDRB." Appellee-Applicants have moved to dismiss Question III on the basis that the contested conditions relate only to construction of the project and not to this Court's jurisdiction to hear this appeal.

Conditions 2 through 5 require that certain lights, proposed on the plans but presumably disapproved by the DRB, "shall not be placed" (Condition 2); require that fencing shall be installed in a specified location (Condition 3); regulate the maintenance and replacement of landscaping materials (Condition 4); and limit the hours of construction, stating that "[a]ny change in hours of construction shall require prior approval of the TDRB." (Condition 5). In their motion, Appellants have not claimed to contest any of these conditions, other than Condition 1.

Conditions 2, 3, and 4 pose no legal issues: they simply implement the DRB's decision on certain aspects of the proposal. While Condition 5, like Condition 1, establishes an unspecified "prior approval" by the DRB for any changes to the hours of construction, it may simply be awkwardly worded, but intended to mean that any change in hours of construction would have to be the subject of an amendment to the permit. In any event, as the application is <u>de novo</u> before the Court, the Court will expect the parties to state at trial or in their post-trial memoranda whether they seek these or different conditions, should the application be approved.

With respect to Condition 1, there is nothing wrong with a condition that requires that all <u>other</u> permits (beyond those required by the Zoning Regulations) must also be obtained before construction will be allowed to begin. However, as the site plan approval standards (§709(B)(5)) and the Planned Residential Development standards (§313(C)(i))

---

[4] Neither party has provided a copy of the decision on appeal; we have therefore taken the text of the conditions from the parties' memoranda on this issue.

8

require review of provisions for stormwater <u>within</u> the Zoning Regulations, Appellants are correct that the DRB, and hence this Court, must review those provisions in the context of the present proceedings, and may not postpone review of this required issue to any later unilateral consideration by the DRB or its staff outside the public permit application process. See, <u>In re Appeal of Sunset Cliff, Inc.</u>, Docket No. 26-2-01 Vtec, slip op. at 3–5 (Vt. Envtl. Ct. Nov. 13, 2001).

On the other hand, if the DRB had intended by that language to postpone its consideration of the stormwater issue to its future review as part of the present permit proceedings before the DRB, so that the DRB's decision on that issue would also be appealable to this Court, such piecemeal appeals are disfavored. <u>In re Pyramid Co. of Burlington</u>, 141 Vt. 294, 305 (1982). In any event, the Court would generally accumulate such appeals to hear them all together. V.R.E.C.P. 2(b).

Nevertheless, even if the challenged condition is defective as written, the DRB's decision does not therefore lack finality or have to be remanded. No remand is necessary regarding the issue of stormwater (or any other issue) because the application is <u>de novo</u> before the Court as to whether the proposed project meets the stormwater requirements and all other requirements of the regulations. It is up to the Court in the scheduled trial on the merits to determine whether the proposal meets the requirements of the Zoning Regulations; if it is approved, the Court will determine independently whether to impose any conditions, whether or not they were imposed by the DRB.

Accordingly, Summary Judgment is GRANTED in PART in favor of Appellants on Question III of the Statement of Questions, in that the DRB improperly left the issue of the adequacy of the stormwater system to be decided upon later unspecified DRB review, but is GRANTED in PART in favor of Appellee-Applicants in that the application is <u>de novo</u> before the Court as to whether the proposed project meets the stormwater (or any other) requirements of the regulations. This ruling concludes Question III in Docket No. 126-6-07

9

Vtec.

<u>Question I</u>

At the telephone hearing held on an audio-taped record on October 1, 2007, the Court and the parties went over the statement of questions seeking to narrow the issues to those actually put in issue by Appellants. V.R.E.C.P. 5(f) ("a statement of the questions that the appellant desires to have determined"); 10 V.S.A. § 8504(h) ("on those issues which have been appealed").

The Motion to Clarify is GRANTED; however, a clarified statement of questions has not yet been made final, as some issues remain to be narrowed after Appellants' expert witnesses have had an opportunity to go on the site, or after Appellants' filing (due October 4, 2007) stating the sections of the Town Plan that are put in issue by Appellants' Question 8(a). A draft of the clarified statement of questions as it stood at the end of the October 1, 2007 telephone hearing is attached for the parties' reference; we will hold a further pretrial conference on Friday, October 12, 2007, from 9:00 to 10:00 a.m., to establish the final version of Question I prior to trial. The parties also should be prepared to discuss the date and arrangements for the site visit, and to deal with any last-minute issues so that the trial will be able to proceed smoothly in the time allotted to it. Please be prepared to advise the Court of any arrangements the parties have made to group witnesses on specific topics, such as stormwater or traffic, bearing in mind that the Thursday, October 18, trial day is scheduled to conclude no later than 2:30 p.m.

Done at Berlin, Vermont, this 3rd day of October, 2007.

_____
Merideth Wright
Environmental Judge